WILLIAM KING, APPELLANT v. JOHN MITCHELL ET AL., AP-
PELLEES.

332

The case was argued by Mr Webster and Mr Jones, for the appellants; and by Mr Coxe, for the appellees.

Mr Webster, for the appellant.

Mr Coxe, for the appellees.

334

336·

Mr Jones, in reply.

Mr Justice STORY delivered the opinion of the Court.

This is an appeal from a decree of the district court of the United States for the western district of Virginia, in a case, where the appellant was the original defendant, and the appellees the original plaintiffs in equity.

The bill was brought by the plaintiffs, as heirs at law of William King deceased, to obtain a perpetual injunction of a judgment at law, upon an ejectment, in which a recovery was had by the appellant, of certain parcels of land, which he claimed as devisee under the will of the said William King, deceased. The case in which the recovery was had, came before this court upon a special statement of facts, agreed by the parties, at January term 1830, and will be found reported in the third volume of Peters' Reports, p. 346. In that case, all the material facts applicable to this case are set forth, and, therefore, we content ourselves with a reference to it: and the real question for decision in the present suit is; whether, under the will stated in that case, the present appellant took a beneficial estate in fee in the premises; or an estate in trust only, which trust, in the events which have happened, has been frustrated, and there now remains a resulting trust for the heirs at law of the testator. The bill asserts, that the estate was a mere estate upon a trust; which has failed; and that there is a resulting trust for the heirs at law ; that they are consequently entitled to the injunction prayed for; and to other relief, as prayed in the bill. The decree was in favour of this construction of the will, and proceeded to grant the injunction, and to decree a partition accordingly.

The main clause of the will, upon which the question arises, is in the following words: "In case of having no children, I then leave and bequeath all my real estate, at the death of my wife, to William King, (the appellant) son of brother James King, on condition of his marrying a daughter of William Trigg and my niece Rachel his wife, lately Rachel Finlay, in trust for the eldest son or issue of said marriage ; and in case such marriage should not take place, I leave and bequeath said estate to any child, giving preference to age, of said William and Rachel Trigg, that will marry a child of my brother James King's, or of sister Elizabeth's, wife of John Mitchell, and to their issue." Upon the construction of the

terms of this clause, it has been already decided by this court in 3 Peters 346, that William King, the devisee, took the estate upon a condition subsequent, and that it vested in him, (so far as not otherwise expressly disposed of by the will) immediately upon the death of the testator. William Trigg having died without ever having had any daughter born of his wife Rachel, the condition became impossible. All the children of William Trigg and Rachel his wife, and of James King and Elizabeth Mitchell, are married to other persons; and there has been no marriage between any of them, by which the devise over, upon the default of marriage of William King (the devisee) with a daughter of the Triggs, could take effect. So that the question, what estate William King took under the devise, whether a beneficial estate co-extensive with the fee, or in trust, necessarily arises; for no rule of law is better settled, than that where lands are devised in trust for objects incapable of taking, there is a resulting trust for the heirs at law. The only difficulty is in the application of the will to particular cases; and to ascertain, whether (as Lord Eldon expressed it in King v. Denison, 1 Ves. and B. 260, 272) the devisee takes *subject* to a particular trust, or whether he takes it *for* a particular trust.

In consulting the language of this clause, it is difficult to perceive any clear intention that William King is to take, under any circumstances, a beneficial interest in fee. He is no where alluded to in the will as the primary object of the testator's bounty, or as, in any peculiar sense, a favoured devisee. The object of the testator seems to have been, to keep his great estate together, and to pass the inheritance to some one, who should unite in himself the blood of his own family and that of his wife, and thus become the common representative of both. He does not seem to have contemplated any improbability, much less any impossibility in such an event, and therefore he has made no provision for the failure of offspring from such a union. Now, looking to the the state of the families at the time when the will was made, is there any thing unnatural in his expectations, or extraordinary in his omission to provide for events apparently so remote and speculative. We must construe the will, then, according to its terms; and to events within the contemplation of the tes-

tator; and not interpose limitations by conjecture, which he might have interposed, if he could have foreseen, what is now certain, the failure of the first objects of his bounty. He gives to William King all his real estate, on condition of his marrying a daughter of William Trigg and his niece Rachel Trigg. And if the language had stopped here, there could be no doubt, that a beneficial interest in fee could have been perfected in him, upon his compliance with the condition, or upon its becoming impossible. But the implication of such beneficial estate, is repelled by the succeeding words. It is devised to him, not absolutely, upon fulfilment of the condition, but "in trust for the eldest son or issue of said marriage." It is manifest, then, that the estate was not contemplated to vest in William King beneficially; for a trust coextensive with the fee, is given to his issue. And it is (as was remarked by the chief justice in delivering the opinion of the court in the former case, in 3 Peters 346) quite consistent with the general intention of the testator, and his mode of thinking, as manifested in his will, to suppose an intention, that in the mean time the profits should accumulate for the benefit of the issue, for whom the estate was designed. It is as clear, that in the event that the marriage should not take effect, the beneficial estate was not intended to remain with William King. The will goes on to provide for that contingency, and declares, that in case such marriage shall not take effect, the estate shall go to any child, giving preference to age, of William and Rachel Trigg, that will marry a child of his brother James or his sister Elizabeth. So that, in the only alternative event contemplated by him, he strips the devisee of the beneficial estate in favour of another branch of the families, uniting the blood of both by an intermarriage. It is no objection, that this devise over may be too remote to be valid in point of law. Upon that we give no opinion. It is sufficient for us, that no such objection was contemplated by the testator; and, so far as his intention is expressed, it is coupled with a beneficial interest for others, excluding that of William King. To create such interest in the latter, we must supply an intention, and not construe the language of the testator. We must conjecture what he would have done, and not merely decide what he has done.

It is said, that William King was a favourite nephew; and

therefore, an intention to vest a beneficial estate in him, ought to be implied. But, how does that appear in a form so imposing, as to justify such a conclusion? There is, it is true, no legacy given to him by the will; and therefore, it is suggested, that it could not have been the intention of the testator to clothe him with a barren trust. But a man—to whose issue, in events within the immediate contemplation of the testator, a splendid fortune was to pass, and in whom, in the mean time, the estate was to vest for the benefit of those who must necessarily be most near, as well as most dear to him, the objects of all his affections and all his anxieties—could hardly be deemed without some adequate equivalent for his labours in a trust which was to centre in him for the benefit of his offspring. And if no marriage should take place, which could bring such issue into existence, the subsequent devise over demonstrates, that William King was not even then first in the thoughts of the testator; but the future offspring of his relations, doubly connected by the blood of both families. They were second in preference only to the issue of William King by a Trigg, and certainly not to King himself. It has been asked, what would have been the result, if King had married a Trigg, and had had no issue by her? The answer is, that the will does not look to such an event; and as the estate was not beneficially to vest in King in the case of a marriage and issue, it is quite too much to infer, that in all other events, the beneficial estate was to vest in him, simply because it is not declared to be in another. But it would be sufficient to say, that no such marriage did take effect; and upon the non occurrence of that contingency, the estate was to pass over to other persons, by the very terms of the will; thus repelling the notion that King was to take a beneficial estate where there was neither marriage nor issue.

The argument on the part of the appellant is, that the immediate devise was a beneficial estate in fee to William King, with an executory devise over to the issue of his marriage with a Trigg, if there should be any; and as that event has not happened, the prior estate to him has never been divested. But we do not think that this is the natural reading of the words; and the construction is repelled by the devise over on the failure of that marriage. In order to arrive at such a con-

clusion, we should be obliged to add words not found in the will, nor implied in the context. William King is to take a fee *in trust* for the issue; and the trust is engrafted upon his estate, and is no where said in a given event to displace or supersede it. It is not a devise to him for his own use in fee, until he shall have issue, and then his use to cease, and a trust to arise for such issue.

It is also insisted, that the words "in trust," used in the devise, ought not to be considered as creating a mere fiduciary estate for the issue, (if any) but as a legal use, to spring up by way of executory devise; and that if, by reason of the failure of such use, there is a resulting estate to the heirs at law, it is a legal use, for which their remedy is at law, and not a fiduciary estate for them, for which the present remedy lies in equity. There is no doubt, that the words "in trust," in a will, may be construed to create a use, if the intention of the testator or the nature of the devise requires it. But the ordinary sense of the term is descriptive of a fiduciary estate or technical trust; and this sense ought to be retained, until the other sense is clearly established to be that intended by the testator. Now, we think, that in the present case, there are strong reasons for construing the words to be a technical trust. The devise looked to the issue of a person not then in being; and of course, if such issue should come in esse, a long minority must follow. During this period, it was an object with the testator to uphold the estate in the father for the benefit of his issue; and this could be better accomplished by him, as a trustee, than as a mere guardian. If the estate to the issue were a use, it would vest the legal estate in them, as soon as they came in esse; and if the first born children should be daughters, it would vest in them, subject to being divested by the subsequent birth of a son. A trust estate would far better provide for first contingencies than a legal estate. There is then no reason for deflecting the words from their ordinary meaning.

In cases of this sort, little aid can be gathered from the authorities; as there rarely are such coincidences in the language of wills and the circumstances of the cases, as to lead unequivocally to the same conclusion. We have examined the authorities, however, and they do not seem to us in any

degree to interfere with the opinion which we entertain on the present devise. Indeed, some of the cases strengthen the reasoning on which we rely. But a critical examination of them would occupy too much time. Our opinion then is, that the estate given to William King of the devise in question, is not a beneficial estate in fee, but an estate in trust for his issue; and that the trust having failed, there remains a resulting trust to the heirs at law of the testator, if the devise over does not take effect.

The devise over has not as yet taken effect. There is no person who now answers the description contemplated in that devise. No child of the Triggs has as yet married a child of James King or of Elizabeth Mitchell; and in the present state of things, such a marriage is impossible. Whether the contingency on which this devise over was to take effect, was or was not originally too remote to be good in point of law, because a marriage might take place between a child of the Triggs then unborn, and a child of James King or Elizabeth Mitchell, at a period more remote than twenty-one years after their respective births, and yet fall within the terms of the devise, is a question upon which (as we have already said) the court will express no opinion. It does, however, create some embarrassment in the case. And the question is, whether, until such event as the contemplated marriage shall happen, the heirs are not entitled to the relief they seek, as a resulting trust, which is at present vested in them, and which can only be displaced (if at all) by the actual occurrence of a marriage, which shall take place upon a future contingency. We think that they are entitled to the relief, leaving the case open for the rights of any person, who may hereafter rightfully claim title against them under the devise over.

The decree of the district court is therefore affirmed with costs, and the cause is remanded for further proceedings.

This cause came on to be heard on the transcript of the record from the district court of the United States, for the western district of Virginia, and was argued by counsel; on consideration whereof, it is ordered, adjudged and decreed, by this court, that the decree of the said district court in this

cause be, and the same is hereby affirmed with costs. And it is further ordered and decreed by this court, that this cause be, and the same is hereby remanded to the said district court, with directions that further proceedings be had therein, according to law and justice, and in conformity to the opinion of this court.