Nash, J.
 

 Samuel McComb died in the year 1795, having previously made his last will and testament, duly executed to pass real estate. At the time the will was made, he had three children, Samuel, James, and Mary. The latter afterwards married the plaintiff, and is since dead, leaving children.— Samuel McComb lived several years after making his will,
 
 *451
 
 and had another son, Robert, one of the defendants. By his will, Samuel MoComb devises as follows : “1 will and bequeath unto my eldest son, Samuel McComb, my two- tracts of land lying on both sides of McCullock’s Greek, in the north-west of Charlotte town, and the half of the house I live in; and also one negro wench, &c. 1 also give unto my second son, James McComb, the other half of this house I live in, and the lot it is built upon, with other appurtenances thereunto belonging, and my lot at the east side of the Spring head.” . He then makes a bequest of a negro girl to his daughter Mary ; then follows this direction, “I also will and appoint, that if any one of said children shall or do die before of age, or before they have lawful heirs, begotten of- their own bodies and is come of age, that, in that case, what is to be then found of their
 
 legacy
 
 shall go or be given to the next one or two, that is living,- and equally divided between the two living ; if but one surviving,, to get the whole.”
 

 James died under age and without issue, leaving his brother Samuel and his sister Mary, alive. Robert McComb, the defendant, purchased from Samuel McComb, his interest under the devise in the house and lots described in the clauses set forth above. The bill is filed for a sale of the lots, and for a division of the proceeds. The sale has been made under an order of theCourtof Equity ofMecklenburgCounty,-and the money is in the office awaiting the decree, as to the rights of the parties in the fund.
 

 For Robert McCombe, who stands in the place of Samuel McCombe, it is contended here, that by the devise of half of the house, one half of the lot passed ; on the other hand, the plaintiff claims, that, under the devise to James, one half of the house and the whole of the lot, excepting that portion on which Samuel's half stands, passed to him, together with the half of the back lot, being all of that lot owned by the testator. It is very certain, that, by the devise of a house, land will pass. Croke Eliz, 89.
 
 Den on dem. of Clemans
 
 v.
 
 Collins. 2
 
 Term Rep. 409.
 
 2
 
 Saund.- 401, n.
 
 2.
 
 1st Tho. Coke 173. The Touchstone 74. And it is a general rule, that the words
 
 *452
 
 made use of by a testator are to' be understood, When unexplained by him, so as to have their legal effect and operation. If,
 
 therefore, the
 
 devise to Samuel stood alone, it would have ^ eq-ec(. c\aimed for itbecause the law would infer, in that case, that such was the intention of the testator. But this legal inference lasts no longer, when, from what the testator has Said in the'will, such clearly appears not to have been his intention. To hold' otherwise, Would be binding up people to legal technicalities, and making their ignorance a trap for them, without allowing them,- in the instrument, to explain themselves.
 
 Crom
 
 v.
 
 Odell, 1
 
 Ball. & Bev. 472.
 
 Loveacres
 
 v.
 
 Blight,
 
 Cowper 355. 2 Bal. & Beat. 413.
 
 Beaumar
 
 v.
 
 Stock,
 
 2 Bal.
 
 &
 
 Beat. 413.
 

 With a view to ascertain what is the meaning of a testator, every part of the' will is to be considered, and such is the rule both in Courts of Law and Equity.
 
 Gittingard
 
 v.
 
 Stril,
 
 1 Swanst. 28.
 
 Booth and Blundell,
 
 1 Mer. 217, and
 
 Pittman Stevens, 15
 
 East. 5L0. Let us test this devise by these rules. The testator’s real estate consisted of two tracts of land, adjoining the town of Charlotte, and the house and lots. We say this was the whole
 
 of
 
 his real estate, because he devised no other, nor is there any' evidence that he possessed or owned any other. To his eldest son,- Samuel, he devises the whole of the land in the country, and one-half of the house in town, and to James, in a separate and distinct clause, he devises the other half of the house, “ and
 
 the
 
 lot it is built upon, with other appurtenances thereunto belonging, and my back lot.” It has been argu'ed, that the word “'half,” so clearly connected with the only word in the clause of giving, over-rides the whole clause, and governs- the word “ lot” in the succeeding part. We do not think so.- The words
 
 are,11 the lot,”
 
 which import, necessarily, the whole lot. This is strictly true, grammatically speaking,- “ The,” is a definite article before nouns, which are specific or understood, and is used to limit or determine their extent.
 
 The lot,
 
 then, without more, means the piece of ground of an ascertained quantity, marked off in the plan of the town of Charlotte. But the testator goes on to
 
 *453
 
 be more specific, and adds the words, “upon whichitisbuilt.” These latter words tell us; what lot is devised, and the definitive' article the, shows the intention to be the whole lot. Why use the article
 
 the
 
 before “lot,” if the testator meant to devise but one-half of it. Omit the article, and the half;-according to that construction, might be meant. Nor does this construction at alH-nterfere with the
 
 Anonymous case
 
 in 2 Haywood, 161, nor with that of
 
 Black
 
 v.
 
 Ray,
 
 in 1st Dev. & Bat. 334 In both these cases, the things devised are-all in one consecutive sentence, and followed by the words limiting the extent of the estate devised. No other construction could be placed on the words, with any regard to the ordinary rules of construction,-as is observed by the court in the latter case. But the testator in the two devises, we are now considering; has' seemed to be desirous to leave nothing to conjecture, as to his' meaning. In the clause devising, to Samuel a share in the-house,-he mentions nothing
 
 but'.half the house.
 
 In that to James he includes, “the lot upon which it is built, and with-1 other appurtenances thereunto belonging,” appropriately such' buildings, rights and improvements, as are upon the land,'and' used with the dwelling house as appurtenances thereto.'— From the map, with which we are furnished, it appears, there' were on this lot several out buildings, and a part of it was a garden.- The testatóromits all these,' when devising to Samuel,- and-uses words which embrace them all,-when devising to James. In-giving a construction to a will, every part of if is to be considered, and no words ought to be rejected upon • which-any sensible meaning can be put, “every string must-give its sound,” for the meaning-of the testator must prevail, - when-it can be fairly found in our language, and is not in contradiction to any rule of law.
 
 Edens and others
 
 v.
 
 Williams' Ex'rs.
 
 3 Murp. 27.
 
 Williams
 
 v.
 
 Lane, 2
 
 Car. L. Rep. 266.
 
 Clement
 
 v. Collins, 2 Term. 503.
 

 To support and sttengthen the construction put on the devise in- favor of Samuel, it has been further argued here, -that it is a rule of construction, -that every devise is intended for the benefit of the devisee,-and that it must have been the in-;
 
 *454
 
 tention of the testator here to make a devise to Samuel, which' wou^ be useful to him. And, if the whole lot is given to James, the devise to Samuel will be without any benefit. The rule is correctly stated, and is supported by the authorities cited by the counsel. To which we answer, a Court of Equity must not reason from inconvenient results, and thereby be induced to put a forced construction on the words used, or give them such a meaning, as was obviously not the intention of the testator.
 
 Junes
 
 v. Johnston, 4 Ves. 573.
 
 Smith
 
 v.
 
 Streator,
 
 1st Merivale, 361, and
 
 Bernard
 
 v.
 
 Montague,
 
 1st Mer. 431.
 
 Hume
 
 v.
 
 Bundell, 2
 
 Sim. & Stre. 117. We do not mean to say, that, when the meaning is doubtful, the court may not look to the inconveniences, which may result from one construction or another. It is true, that, in this case, it might have been more convenient to Samuel, and certainly more to his interest, to have one-half of the lot, as well as one half of the house, but certainly it was a matter of interest to him, and much convenience to have a right to use one-half of the house, particularly as his land was adjoining the town, so that the devise is beneficial to him.
 

 We are called on, to put a construction upon another clause’ ih the will: the one directing the survivorship, or how the property shall be disposed of, on the death of either of the devisees. It is not pretended, that Robert has any interest in the division of the iiind, except as the vendee of Samuel, or, as one of the heirs of James, if the devise over is inoperative. Two objections have been urged against the survivorship; one is, that it is too remote ; and the other, that the real estate cannot pass as a legacy. As to the first objection, we do not think it arises in the case; because it is limited over to the children or child
 
 living,
 
 which ties it up to the event of James' death, without leaving issue. James died before he was twenty-one, without leaving issue. The property should go over,, and the words of the will are satisfied. Upon the death of James, the limitation over to his brother Samuel, and to his sister Mary, took effect. But it is contended on behalf of Robert, that nothing survived, but what was strictly a legacy,
 
 *455
 
 .as the testator has made use of that word in this clause. The ..word “legacy” is properly applicable to bequests of personal "property, but may be extended to embrace other species of .property, not technically within its import, to effectuate the intention of the testator. This was a mixed fund, consisting .of real and personal property. In the case of
 
 Hardacre
 
 v.
 
 Nash,
 
 5 Term, 716, it was extended to embrace real estate, which was included in the clause. And so in
 
 Hope
 
 v.
 
 Taylor,
 
 1st. Dur. 268. In
 
 Sibly
 
 v.
 
 Perry 7 Ves.
 
 522, it was .ex. tended to annuities, and sec. 2nd Hoper on Legacies, 335__ The language of the clause is, “what is .to be found of théir legacy, shall go, &c.” In
 
 Hardacre
 
 v.
 
 Nash
 
 is, “but in case either or both of my children should die before the decease of my wife, then
 
 those legacies
 
 which .are here left them, shall, &c.” In what the testator calls a legacy were embraced several freehold estates, and the Court,.to carry out the intention of the testator, decided that the latter passed under this clause, as well as the personalty, to the widow. Here the testator uses the word “legacy,” as embracing real property together with personalty, and he intended the whole should survive. In this view, the difficulty arising from the uncertainty ofthe words used. “ what shall be then found,” is removed. The land is then, as it was in 1795. We are of opinion, then, that under the will of Samuel Mc-Combe, his son Samuel took but one half of the house, and from necessity the ground upon which it stood, and that James took the other, together with the whole lot except that, upon which Samuel’s half stood, together with the half lot adjoining. That upon the death of James, his share in the lot survived to Samuel and Mary, to be divided equally between them, and that Robert McCombe, by virtue of his purchase, stands in the place of Samuel McCombe. Robert will then be entitled to the whole ofthe value of one half of the house, and the one half ofthe balance, and the plaintiff Williams will be entitled do a life estate in one half of the value of the legacy of James.
 

 Per. Curiam, Decreed accordingly.