264 So.2d 496

Angelo O. FESTORAZZI et al.

v.

The FIRST NATIONAL BANK OF MOBILE et al.

I Div. 676, 676–X.

Supreme Court of Alabama.

June 22, 1972.

Hardy B. Smith, Mobile, for appellants, Angelo O. Festorazzi, Anne Festorazzi and Evelyn Augusta Festorazzi David.

Johnstone, Adams, May, Howard & Hill, Mobile, for cross-appellants, The Merchants National Bank of Mobile as Executor of the will of Elizabeth Mayers, deceased, and Josephine Orvin.

Lyman F. Holland, Jr., Mobile, for appellee, The First National Bank of Mobile, as Executor and Trustee under the Last Will and Testament of Marguerite Festorazzi.

Vincent F. Kilborn, III, Mobile, for appellees, The Providence Hospital, Frank Ahn, as the Head Administrator of the Providence Hospital, and certain indefinite classes of beneficiaries.

648

HARWOOD, Justice.

On 25 September 1963, Miss Marguerite Festorazzi, 69 years of age, executed a will. At the time Miss Festorazzi was a patient in Providence Hospital in Mobile, Alabama, gravely ill with a terminal malignancy. She died on 21 October 1963.

No question is raised as to Miss Festorazzi's competency to execute the will at the time of its execution.

On 23 February 1968, the First National Bank of Mobile, Alabama, as successor executor and trustee under the will, filed a bill in the Circuit Court of Mobile County, Alabama, in Equity, seeking a construction of certain items of the will, particularly Items Three, Five, Seven, and Ten.

The Attorney General of Alabama was permitted to intervene on behalf of the unknown and unascertainable recipients of nursing scholorships provided for in Items Five and Seven of the will.

Answers were filed by respondents Angelo O. Festorazzi, Anne Festorazzi, Evelyn Augusta Festorazzi David, Providence Hospital, Josephine B. Schock, as administratrix of the will of Roberta Thompson, Reynolds T. Alonzo, Jr., as guardian ad litem for Theodore Lavretta, the Attorney General of Alabama, Josephine Orvin, and the Merchants National Bank of Mobile, Alabama, as executor of the will of Elizabeth Mayers, she having died during the hearing of the cause. Three of the respondents, Margherita Ivulich, Rosalie Schermer, and the Curtis Institute of Music filed no pleadings.

A hearing was had upon the complaint and above mentioned answers, and after such hearing the cause was submitted for decree on the pleadings, testimony and exhibits offered in open court during the several hearings of this cause.

Thereafter the Chancellor entered his decree construing several sections of the will. A timely appeal from such decree was taken by Angelo Festorazzi, Anne Festorazzi, and Evelyn Augusta Festorazzi David. Citation of appeal was served upon the First National Bank of Mobile, the complainant, and also upon the other respondents. The Merchants National Bank, as executor of the will of Elizabeth Mayers, and the respondent Josephine Orvin have cross assigned errors.

The items of the will pertinent to this review are as follows:

"ITEM THREE

"I give, devise and bequeath all my right, title and interest in and to any and all real property inherited by me from my father, Angelo Festorazzi, and from my mother, Annie Festorazzi, to my brother, Angelo O. Festorazzi, in trust, for the use and benefit of my nieces, Anne Festorazzi and Evelyn Augusta Festorazzi David, share and share alike. However, I expressly direct that Angelo Festorazzi convey and grant the interest of Anne Festorazzi to her at any time she wishes, and by doing so he shall thereby terminate that portion of the trust; and I expressly forbid him from granting or conveying the one-half undivided interest belonging to Evelyn Augusta Festorazzi David to the said Evelyn Augusta Festorazzi David for a period of seven years next after my demise. He must, however, give her the income from her share of said trust estate, regularly; and he must convey her said interest to her upon the termination of the seven year period hereinabove provided for."

"ITEM FIVE

"I give, devise and bequeath all of my Consolidated Rock Product stock to my

brother, Angelo Festorazzi, in trust, for the use and benefit of the following persons: Margherita Ivulich, Mobile, Alabama, for her life; Miss Elizabeth Mayers, 1001 Government Street, Mobile, Alabama, for her life; Mrs. Rosalie Schermer, Topic Street, Mobile, Alabama, for her life; Roberta Thompson, Mobile, Alabama, for her life; and Josephine Orvin, for her life, provided she is still in my employ upon my death. The income from this trust shall be distributed by the Trustee as follows: Miss Margherita Ivulich will receive $500.00 every three months for the duration of her life; Mrs. Elizabeth Mayers shall receive $200.00 every three months for the duration of her life; Mrs. Rosalie Schermer shall receive $100.00 every three months for the duration of her life; Roberta Thompson shall receive $100.00 every three months for the duration of her life; and Josephine Orvin shall receive $540.00 every three months for the duration of her life, provided she is still in my employ upon my death. Provided, however, if I die before the end of October, 1963, Annie Clelia of Mobile, Alabama, shall be the sole beneficiary of this trust for the purpose of receiving the October, 1963, quarterly dividends in its entirety, provided she wishes to go to Battle Creek, Michigan; and in such case the above enumerated bequests shall not take effect until the next quarterly dividend is declared and paid. However, if Annie Clelia does not go to Battle Creek, Michigan, before January 1, 1964, the other bequests enumerated above shall take immediate effect upon my death. I further desire that any fluctuation in the annual dividend or income of the said trust shall be prorated among the above beneficiaries whether their shares be more or less than the sums set out herein.

"Upon the death of each of the above beneficiaries a pro rata share of the stock that can be withdrawn without splitting a share is hereby given and bequeathed to Angelo O. Festorazzi, in trust, for his life, and upon his death to my niece, Anne Festorazzi, in trust, for her life, and upon her death to my niece, Evelyn Augusta Festorazzi David, in trust, for her life, and then upon her death to the First National Bank of Mobile, Mobile, Alabama, in trust, as part of the ANGELO SYLVESTRO FESTORAZZI SCHOLARSHIP TRUST FUND established in Item Seven of this will, and the Trustee in this Item is directed to transfer said portions of said stock within a reasonable time thereafter to either or both of the said Anne Festorazzi and Evelyn Augusta Festorazzi David, respectively, at her sole discretion."

"ITEM SEVEN

"I give, devise and bequesth to Angelo O. Festorazzi, in trust, for his life, and upon his death to my niece, Anne Festorazzi, in trust, for her life, and upon her death to my niece Evelyn Augusta Festorazzi David, in trust, for her life, and then upon her death to the First National Bank of Mobile, Mobile, Alabama, in trust, the following three parcels of real property located in Mobile, Alabama, namely: that property owned by me on the corner of Lawrence Street and St. Louis Street in Mobile, Alabama; that property owned by me at 2507 Government Street, Mobile, Alabama, known as Dick Russell's Barbeque; and that property located on Stanton Road in Mobile, Alabama, which is owned by me; and the following personal property owned by me at the time of my death: All the stocks and bonds owned by me at the time of my demise, EXCEPT my Consolidated Rock Products Stock herein before mentioned in Item Five, in trust, for the following charitable purposes: To educate chosen persons of need and ability in the fields of art, music and medicine, as follows:

"1. From the annual income of said property a $2,000.00 scholarship shall be paid by the acting Trustee to the most promising piano student in the Curtis Institute of Music, said student to be chosen by the head of the Curtis Institute of Music each year; and this award shall be called the PAUL G. MEHLIN SCHOLARSHIP;

"2. From the annual income of said property a $2,000.00 scholarship shall be paid by the acting Trustee to the most promising singer in the Curtis Institute of Music and such chosen singer shall be selected by the head of the Curtis Institute of Music; and the award shall be called the ANGELO SYLVESTRO FESTORAZZI SCHOLARSHIP, and it shall be granted each year; and

"3. The residue of the income from this trust property shall be devoted to scholarships of $1,000.00 each, based upon need and ability, to young men and women in training as nurses in the Providence Hospital, Mobile, Alabama; and the participants in each of these scholarships shall be chosen by the head administrator of the said Providence Hospital, Mobile, Alabama. This scholarship shall be called the DOCTOR ANGELO FESTORAZZI SCHOLARSHIP, and it shall be a $1,000.-00 annual scholarship for each such stucent.

"And, this entire trust fund shall be called the ANGELO SYLVESTRO FESTORAZZI SCHOLARSHIP TRUST FUND, which name shall appear in bold print across the face of each check or draft issue by the acting Trustee on the said fund. The purpose of this fund is to perpetuate the name of Angelo Sylvestro Festorazzi and to promote the education of persons of need and ability in the enumerated fields."

### "ITEM TEN

"I hereby authorize and empower my executor to pledge any of my property, real or personal, as collateral to secure loans for the purpose of paying estate and other taxes on my property, and to execute notes, mortgages and other instruments necessary to borrow said money, it being my desire to avoid a forced liquidation of any of my property for this purpose, said property to be so pledged to be selected at the discretion of the executor; and no distribution to legatees or devisees shall be made until estate taxes are paid, and if it is necessary to secure loans to pay said taxes, no legacies in this will shall be paid until the said loans are repaid."

It appears from the record that while Miss Festorazzi was in Providence Hospital during her terminal illness, she retained the services of Mr. Samuel Stockman, an attorney in Mobile, to prepare a will for her.

Mr. Stockman described Miss Festorazzi as being strong minded. This inference is also drawn from the record. She inherited a substantial estate from her mother and father, and by her own activities in the business world had considerably increased her original holdings.

Mr. Stockman made several visits to Miss Festorazzi's hospital room in connection with the preparation of her will. She made changes in the drafts of the will he had prepared until she was satisfied with the draft which she executed.

Mr. Stockman testified clearly to the effect that it was Miss Festorazzi's wish to place her estate in two categories for disposition. In one category she placed the properties which had come to her through inheritance from her mother and father. This "family" property she desired to devise and bequeath to her brother Angelo, in trust, however, for the benefit of her nieces, Anne Festorazzi and Evelyn Augusta Festorazzi David. This she did under the provisions of the will not here in question.

In a second category Miss Festorazzi placed the property and assets which she had accumulated through her own efforts. According to Mr. Stockman, as to the property in this category, "she took the position that she owned and earned outright, she took the position she could distribute that any way she wanted to and she undertook to distribute that in a different manner, in a varied manner."

In regard to Miss Festorazzi's instructions to him concerning her wishes which led to the language used in Items Five and

Seven of the will naming members of the Festorazzi family and the First National Bank of Mobile as successor trustees, Mr. Stockman testified as follows:

"Q Can you recall any conversation with Miss Festorazzi or her instruction to you regarding her desires which lead you to use this particular language in these two Items in the Will?

"A If I recall correctly she just wanted these members of her family to handle these trusts until they were deceased and when they deceased the First National Bank was to take over and handle the trusts, those properties, and keep the perpetual fund going in one name.

"Q With regard to Item Seven which sets up the specific provisions for the scholarship fund do you recall her giving you any instructions as to provisions for lifetime beneficial interests in favor of her brother, Mr. Festorazzi, and her two nieces?

"A No she did not give me any instructions.

"Q Do you recall that she did not give you such instructions?

"A She did not give me any such instructions.

"Q You're stating then that the provision in Item Seven which says, 'I give, devise and bequeath to Angelo and upon his death to my two nieces' was intended as Trustees?

"A That's correct. In the same light as the First National Bank in trust. The language is the same.

"Q Did you have the same instructions with regard to the language contained in Item Five?

"A That is correct, the Item dealing with Consolidated Rock Products."

Mr. Stockman further testified:

"That was my understanding, they were successor trustees. I may have the wrong impression, the wrong understanding but that's my understanding."

During his cross examination Mr. Stockman was asked:

"Q Do you today have a recollection about your instructions from Miss Festorazzi on the contents of Items Five and Seven respecting trustees and beneficiaries which you didn't have on July 29, 1968?"

(On July 29, 1968, Mr. Stockman had testified in one of the prior hearings.)

Objection to this question being overruled, Mr. Stockman entered upon a very lengthy and involved answer. We set forth a portion of this answer as illustrative:

"* * * I think it's either a recollection, or an impression from a recollection from having been looking at this will, and looking at these provisions as they were pointed out to me. Whether I am drawing this from an impression of what I recall, or what I recall, is very difficult for me to discern, but my impression seems to be that there was a trust situation, that these people were to be trustees. * * *"

The reporter's transcript carries no punctuation, and we have added commas in the above quoted material in the interest of clarity.

Answers to further questions during his cross examination would strongly indicate that Mr. Stockman's conclusions as to Miss Festorazzi's intent were based on his impression from his conversations with Miss Festorazzi during the drafting of the will as well as "looking" at the will, although he could not recall the specific words of these conversations.

Mr. Stockman further testified that he was not familiar with Miss Festorazzi's estate at the time he drafted the will, that is, just what property she owned.

Numerous witnesses were presented in the hearings below, and the result is a voluminous record of some 900 pages. Several witnesses presented by the appellants testified as to the amicable relations that

had always existed between Miss Festorazzi and her brother and two nieces.

The Chancellor entered his decree in due time, and the three respondents who were members of the Festorazzi family perfected this appeal.

We will now consider those parts of the decree which are made the bases of appellants' assignments of error.

Appellants' assignment of error No. 1 is general and asserts that the court erred in entering its decree of 21 October 1970.

Assignment of error No. 2 charges error on the part of the court in decreeing that all three parcels of land, described by metes and bounds in paragraph 6 of the decree, were included in Item Seven of the will which devised testatrix's property "located at the corner of Lawrence and St. Louis Streets in Mobile, Alabama," and in further decreeing that it was the testatrix's intent that all three parcels were to pass as one parcel under the will.

Assignments of error Nos. 1 and 2 have been joined for argument.

It appears that Miss Festorazzi purchased a lot at the corner of St. Louis and Lawrence Streets in 1926, the lot fronting some 117 feet on St. Louis Street, and 109 feet on Lawrence Street. On this lot she erected an ell shaped building which fronted along each street. Later the building was enlarged by incorporating the theretofore vacant space in the ell as a part of the building. With this change an additional rental building came into being.

In 1952 Miss Festorazzi acquired a leasehold interest with right to purchase in a vacant lot some 57 feet in width which adjoined her lot on Lawrence Street, which was of approximately the same depth as her lot.

In 1954 Miss Festorazzi purchased a lot some 63 feet in width which adjoined her lot on the St. Louis Street side, and of a depth of her lot.

Thus, Miss Festorazzi's adjoining holdings constituted a single tract at the in-

tersection of St. Louis and Lawrence Streets.

In Item Seven of her will Miss Festorazzi devised and bequeathed "to Angelo O. Festorazzi, in trust, for his life, and upon his death to my niece Anne Festorazzi, etc., * * * the following three parcels of real property located in Mobile, Alabama, *namely, that property owned by me on the corner of Lawrence and St. Louis Streets in Mobile, Alabama*; * * *" (Emphasis ours.) There then follows a description of two other parcels devised as was the property at the corner.

In paragraph 6 of his decree the Chancellor decreed it was the intent of the testatrix that all three parcels located at the corner of Lawrence and St. Louis Streets were to pass as "property owned by me at the corner of Lawrence and St. Louis Streets in Mobile, Alabama."

It is the contention of counsel for the appellants that there is no evidence to support the above finding by the court. The basis of counsel's argument that it was not the intent of the testatrix that all three parcels should pass as a single unit, is that the parcels were acquired at different times, they were rented to different tenants, and the rentals were handled in different ways, Miss Festorazzi collecting some of the rents directly, and real estate agents handling some of the rents, and further, her interest in the parcel acquired in 1952 constituted only a freehold interest.

Counsel for appellants further contend that had the testatrix desired to devise the corner lots as a unit, she could easily have done so by specifically mentioning them. It seems to us that just the converse is more likely, that is, if she had not desired to treat her corner property as a unit, she could easily have separated them in the devise.

None of the numerous and able counsel participating in this appeal has found or cited a "spotted horse" case on the point now being considered, though counsel for

appellee, the First National Bank of Mobile, has cited and set out a few cases from other jurisdictions somewhat analogous.

█ We think more analogically applicable to the point now being considered is the principle established in those cases relating to the construction of grants in deeds. This principle is to the effect that where a deed or conveyance contains a general description which is certain and definite in itself, and is followed by a particular description, the latter will not limit or restrict the grant which is clear and unambiguous in the general description. Spires v. Nix, 256 Ala. 642, 57 So.2d 89, and cases cited therein.

Of course the devise in the present case described the land at the intersection in general terms. There was no specific description. The description of the land devised was clear and unambiguous.

█ We hold that where one owns a tract of land in a single unit, or an interest therein, and devises such land by a general description which is certain, the time of acquisition of various components of the tract, or the method of leasing parts of the tract, can in no wise diminish a clear devise of the entire tract.

The appellants can gain nothing under assignments of error Nos. 1 and 2 in the aspects argued.

█ Appellants have grouped assignment of error No. 1 and assignment of error No. 4 for argument. Assignment of error No. 4 asserts that the court erred in decreeing that an interest in Lots 121–122, Hillside Park, West Palm Beach, was the property of the testatrix and devisable by her under Item Three of her will.

Under Item Three of the will, the testatrix devised all real property inherited by her from her father and mother to Angelo O. Festorazzi, in trust, for the use of her nieces Anne Festorazzi and Evelyn Augusta Festorazzi David.

In brief counsel for the appellants state that though the two nieces, who are appellants, are the beneficiaries under Item Three of the will, they are in disagreement with paragraph One of the court's decree in which it was decreed that testatrix's interest in said Lots 121–122 were devised under the will. The appellants contend that these lots were not a portion of the estate of the testatrix, but were the sole property of their grandmother, Annie M. Festorazzi, the mother of the testatrix.

In support of this argument, appellants point out that in the Federal Estate Tax Return filed on 22 March 1962, by Marguerite Festorazzi, as Executrix of the Estate of Annie M. Festorazzi, she listed the above lots as the sole property of her mother's estate, and did not list the lots on the extra sheet No. 1 of the return on which was shown undivided interests in various real estate parcels jointly owned by her and her mother.

On the other hand, there was received in evidence at the behest of Providence Hospital and Certain Indefinite Classes of Beneficiaries the Resignation and Petition for Final Settlement filed by Angelo O. Festorazzi, in the Probate Court of Mobile County, Alabama, in the matter of the Estate of Marguerite Festorazzi. This document was subscribed and sworn to on 7 December 1966. This document lists as assets of the estate of Marguerite Festorazzi an undivided ⅓ interest in Lots 121 and 122, Hillside Park, West Palm Beach, Florida

There was also received in evidence without objection a penciled copy of the estate tax return prepared by Angelo O. Festorazzi in April 1965, for the estate of Marguerite Festorazzi. This document also shows Marguerite Festorazzi as owning a ⅓ interest in the two lots in West Palm Beach.

There was no evidence presented as to the source of title of the interest of the testatrix in these two lots.

In this posture of the record, we are unwilling to cast error on the lower court in concluding that the testatrix owned a ⅓ interest in Lots 121 and 122, as above mentioned, and that such interest was devised under Item Three of her will.

■ Appellants next argue jointly assignments of error Nos. 1 and 5. Assignment of error No. 5 is to the effect that the court ·erred in decreeing that all of the net income of the estate, both from real property and from personal property, is subject to being used for paying estate taxes due by either Marguerite Festorazzi or her estate, and for the repayment of any loans which have been, or may be, made by the executor, for the purpose of paying such estate and other taxes.

Involved in assignment No. 5 is a construction of Item Ten of the will. The Chancellor decreed that all net income of the estate, both from real and personal property, is subject to being used for the payment of estate and other taxes due either by Marguerite Festorazzi or her estate, and also used for the repayment of any loans made by her executor for such purposes · (Par. 11 of decree); that in the event a refund of Federal or State estate taxes ·is procured by the executor, such refunds, after payment of necessary expenses, shall be paid over ratably to the specific income devisees and legatees whose income was intercepted and used· to pay such taxes, or loans incurred to ·pay them (Par. 12 of decree); and that no further distribution to any devisee or legatee should be made until all estate taxes, or loans made to pay them have been repaid in full (Par. 14 of decree).

For convenience we again set out Item Ten of the will.

"ITEM TEN

"I hereby authorize and empower my executor to pledge any of my property, real or personal, as collateral to secure loans for the purpose of paying estate and other taxes on my property, and to execute notes, mortgages and other instruments necessary to borrow said money, it being my desire to avoid a forced liquidation of any of my property for this purpose, said property to be so pledged to be selected at the discretion of the executor; and no distribution to legatees or devisees shall be made until estate taxes are paid, and if it is necessary to secure loans to pay said taxes, no legacies in this will shall be paid until the said loans are repaid."

It is appellants' contention that although it is clear that the testatrix, having made prior specific bequests and devises in prior items of her will, desired that such devises and bequests not be diminished by the sale of estate property to pay such taxes, yet because of the provision that in the event it was necessary *to secure loans* to pay estate taxes, only *legacies* would be intercepted until such loans were repaid. In other words, the distribution of benefits to devisees could not be interecepted for the purpose of repaying loans which had been made by the executor for the purpose of paying estate taxes.

It is counsels' further contention that the court's decree in effect wrote the words "or devisees" after the words "no legacies" in the last phrase of Item Ten.

The guiding light in construing the terms of a will is the determination of the intent of the maker of the will. No citation is needed to support this well settled principle

A reading of Item Ten shows that it was the desire of the testatrix to avoid a forced liquidation of *any* of her property for the purpose of paying estate taxes. To this end she authorized her executor to pledge any of her property to secure loans for the purpose of paying estate and other taxes, and to execute notes, mortgages, or other instruments to secure these loans, the executor to select the property to be pledged.

In a technical sense and strictly construed, a legacy is a gift or bequest by will of personal property, whereas a devise is a testamentary disposition of real estate.

However, again such distinction will not be permitted to defeat the intent of a testator, and such terms may be construed interchangeably or applied indifferently to either personalty or real estate if the context of the will shows that such was the intention of a testator.   Park National Bank of Newark v. Dillon (Ohio Com.Pl.), 165 N.E.2d 829; Hobbs v. Brenneman, 94 W.Va. 320, 118 S.E. 546; Williams v. McComb, 38 N.C. 450; Burwell v. Mandeville's Executor, 2 How. 560, 43 U.S. 560, 11 L.Ed. 378.

The testatrix expressly stated that it was her desire that a forced liquidation of any of her property for the purpose of paying estate taxes be avoided.  That was her primary interest under the provisions of Item Ten.  She authorized the executor to borrow money and pledge the property of the estate, real and personal, to avoid such a contingency.  All of the income of the estate property, real and personal, was to be used to repay such loans, and there was to be no distribution to either the legatees or devisees until such taxes or loans to pay taxes were paid or repaid.  To accord to the contention of the appellants that in the event the executor borrowed money to pay estate taxes, only the income from legacies would be intercepted to pay such taxes or loans could result in a forced liquidation of properties of the estate should the income from the bequeathed personal property be insufficient to pay such loans or taxes, the very thing the testatrix sought to prevent.

We hold that under the entire sense of Item Ten, the word "legacy" as used in the concluding phrase of such Item Ten, should be construed to include devises as well as legacies, and therefore no error infected the Chancellor's decree in this aspect.

Appellants have also joined for argument assignments of error Nos. 1 and 3.

Assignment of error No. 3 asserts that the court erred in decreeing that Angelo O. Festorazzi, Anne Festorazzi, and Evelyn Augusta Festorazzi David were named as trustees only under the provisions of Item Five and Item Seven of the will and have no beneficial interest in the income in the trusts provided for in said Items.

Items Five and Seven of the will have been set out above, and only those parts of the two above Items necessary to a consideration of assignment of error No. 3 will again be set out.

Item Five provides in part:

"Upon the death of each of the above beneficiaries a pro rata share of the stock . . . is hereby given and bequeathed to Angelo O. Festorazzi, in trust, for his life, and upon his death to my niece, Anne Festorazzi, in trust for her life, and upon her death to my niece, Evelyn Augusta Festorazzi David, in trust, for her life, and then upon her death to the First National Bank of Mobile, Mobile, Alabama, in trust, as part of the ANGELO SYLVESTRO FESTORAZZI SCHOLARSHIP TRUST FUND established in Item Seven of this will, . . . ."

That part of Item Seven pertinent to this review reads:

"I give, devise and bequeath to Angelo O. Festorazzi, in trust, for his life, and upon his death to my niece, Anne Festorazzi, in trust, for her life, and upon her death to my niece, Evelyn Augusta Festorazzi David, in trust, for her life, and then upon her death to the First National Bank of Mobile, Mobile, Alabama, in trust, the following . . . (certain real and personal property then being described in some detail) . . . in trust, for the following charitable purposes . . . ."  (parentheses added)

It is the contention of the appellants that unless the appellants be deemed as entitled to the income of the trusts established un-

der Items Five and Seven of the will, their favorable position as heirs at law of the testatrix will be unrecognized. We think this contention overlooks the provisions of Item Ten of the will.

■ The rule as stated in Roberts v. Cleveland, 222 Ala. 256, 132 So. 314, is:

"That implication which will defeat the heirs at law of the testator is disfavored. Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493. *It is said that this can be accomplished only by necessary implication* in the absence of express words. Wilder v. Loehr, 211 Ala. 651, 101 So. 591." (Emphasis ours.)

A reading of the provisions of Items Five and Seven, we think, amply furnish a necessary implication that the Festorazzis were to successively serve during their lives only as trustees of the trusts created in Items Five and Seven.

In Item Five it is provided that as the specific beneficiaries of the trusts die a pro rata share of the stock in Consolidated Rock Product can be withdrawn and given to the then trustee, *in trust*, as part of the Angelo Sylvestro Festorazzi Scholarship Trust Fund established in Item Seven of the will.

■ Mr. Stockman's testimony was to the effect that it was the testatrix's desire that the Festorazzis were to serve as trustees. While counsel for appellants argue strenuously that Mr. Stockman's testimony expressed only his "impression" as to the testatrix's intent, rather than her own intent, we do not accord to this interpretation of Mr. Stockman's testimony. True, he at times referred to his "impression" of what were the wishes of the testatrix deduced from his conversations with her, he also stated in other portions of his testimony his recollection of testatrix's conversations in connection with the trusts set up in Items Five and Seven, and that "it was a trust situation," and the testatrix never mentioned that the Festorazzis, as trustees were to be beneficiaries under the trusts.

It is clear from Mr. Stockman's testimony that where he speaks of his "impression" as to the intent of the testatrix, such "impression" was based upon conversations had with the testatrix, and was not based upon information gleaned from other sources or other persons. In this background, his "impression" must be deemed to be his recollection and as such admissible in evidence.

It is also to be noted that in Item Seven of the will it is provided:

"And, this entire trust fund shall be called the ANGELO SYLVESTRO FESTORAZZI SCHOLARSHIP TRUST FUND, which name shall appear in bold print across the face of each check or draft issue (sic) by the acting Trustee on the said fund. The purpose of this fund is to perpetuate the name of Angelo Sylvestro Festorazzi and to promote the education of persons of need and ability in the enumerated fields."

Having expressly declared that the purpose of the trust was to perpetuate the name of Angelo Sylvestro Festorazzi and to promote the education of persons of need and ability in the fields enumerated, such declaration is persuasive that the testatrix did not intend that her brother and nieces were to take the benefits of these trusts during their successive lifetimes and thus delay the effectuation of the declared purposes of the trusts. Nor does it seem logical that the name of Angelo Sylvestro Festorazzi would be perpetuated by issuing checks from the fund to the successive individual family trustees, such checks bearing in bold print across the face "ANGELO SYLVESTRO FESTORAZZI TRUST FUND."

The bequest or devise in Items Five and Seven successively to the individual Festorazzis (appellants) were "in trust."

In discussing the meaning of the words "in trust" appearing in a will, the court in King v. Mitchell, 33 U.S. 326, 8 L.Ed. 962, wrote:

"There is no doubt that the words 'in trust', in a will, may be construed to create a use, if the intention of the testator or the nature of the devise requires it. But the ordinary sense of the term is descriptive of a fiduciary estate or technical trust; and this sense ought to be retained until the other sense is clearly established to be that intended by the testate."

And in Baker v. Wright, 257 Ala. 697, 60 So.2d 825, this court stated by way of dictum:

"Before a gift to an executor eo nomine can be held to vest in him individually, the intention that it should so vest must be plainly manifested. In re Murray's Estate, 198 Misc. 45, 99 N.Y.S.2d 32."

There was other evidence tending to show that the appellants were not to enjoy any beneficial interests in the trusts set up in Items Five and Seven. We will not set out such evidence in the interest of brevity and feel that what we have set out is ample to support the Chancellor's conclusions. Certainly, there is no evidence plainly manifesting that it was the intent of the testatrix that the individual trustees, who are these appellants, were to enjoy any beneficial interests in the trusts.

We hold that assignments of error 1 and 3 are without merit in the aspect above discussed.

We come now to consider the cross assignments of error made by Josephine Orvin, and by the Merchants National Bank of Mobile, as Executor of the Estate of Elizabeth Mayers, deceased.

Counsel for the two cross appellants have stated in brief that the issues raised by their cross assignments of error fall into two categories, (1) that the decree was in error in making the income under Item Five subject to being used for estate and other taxes in the manner provided in the decree, and (2) that the decree was in error in holding that all three parcels of land were included in the property devised in Item Seven of the will under the general description of property "located at the corner of Lawrence and St. Louis Streets."

The issue mentioned above as category (2) was the same as raised by appellants' assignments of error Nos. 1 and 2, and was decided adversely to the contention of the appellants, and it follows necessarily that it must be deemed adverse to the contentions of the cross appellants under their cross assignments of error Nos. 9, 10, and 11. We therefore pretermit consideration of these three cross assignments of error.

Under cross assignment of error No. 7, cross appellants argue that the Chancellor erred in that although the Chancellor specifically decreed that the income under Item Five of the will was a specific bequest, nevertheless went on to decree that no further distributions to any legatee or devisee should be made until all estate taxes, and all loans to pay such taxes, have been paid.

Such restriction, asserts counsel for cross appellants, is violative of the established order of charging the assets of an estate for the payment of debts of the estate. The rule established is succinctly set forth in Garrett v. Snowden, 226 Ala. 30, 145 So. 493, as follows:

"*In the absence of expressed contrary intent of the testator,* generally, where assets of an estate are insufficient to pay debts and legacies, the loss falls (1) on the residuary, (2) then on the general legacies, and (3) on the specific legacies and devises." (Emphasis ours.)

Ordinarily, specific devises and legacies abate, in whole or ratably, only when there is successively a failure of assets of an estate in its residue, or in the general bequests or devises to pay charges against the estate. Kelly v. Richardson, 100 Ala. 584, 13 So. 785.

Counsel for cross appellants notes that under Act 291, Section 1, 1951 Acts of Al-

abama, p. 583 (now appearing as Section 449(1), Title 51, Code of Alabama 1940 (pocket part), estate taxes are primarily made a charge against the residue. It must be further noted, however, that this very section begins: "Unless the decedent directs otherwise in his will, all estate taxes, * * *"

It is inferable from the record that the testatrix was an astute business woman, and "careful about taxes * * * She didn't care about paying the government any more taxes than she had to."

Some questions had been raised as to the manner of paying the estate taxes on the estate of the testatrix's mother, and the testatrix was involved in this situation. It is clearly inferable that she was aware of the inroads that estate taxes can make on testamentary dispositions.

In this background, we agree with that part of the court's decree holding that all net income from the assets of the estate, including real and personal property, is subject to be used for the paying of estate and other taxes, and that no further distribution to any legatees or devisees should be made until all estate taxes had been paid, and all loans made to pay such taxes had been repaid.

Such, we conclude, was the intent of the testatrix as reflected in the provisions of Item Ten of her will. It was the testatrix's desire "to avoid a forced liquidation of *any* of my property for this purpose." (Emphasis ours.) This "purpose" could only have been the payment of estate and other taxes. "Any" of her property must be taken to mean any part thereof, whether devised or bequeathed specifically, generally, or as part of the estate residue.

The entire spirit of the language of Item Ten indicates an intent on the part of the testatrix that her testamentary plan not be disrupted or destroyed by the demands of estate taxes.

The cross appellants can take nothing under their cross assignment No. 7.

Cross assignment of error No. 2 asserts error in that part of the decree, paragraph 11, insofar as the same relates to income from the corpus of the trust created in Item Five of the will.

What we have written under cross assignment of error No. 7 disposes of this alleged assertion of error.

Cross assignment of error No. 3 complains of that part of the decree (paragraph 12) "insofar as the same restricts reimbursement of income under the terms thereof to the event that the executor should obtain a refund of taxes."

Paragraph 12 of the decree is to the effect that in the event the executor obtains a refund of state or federal estate taxes, such refunds, after the payment of necessary expenses, shall be paid over ratably to the specific income devisees or legatees whose income was intercepted to pay such taxes.

It is our conclusion that the Chancellor properly decreed that the incomes above mentioned be intercepted. Since any refunds of estate taxes are to be paid over ratably to the devisees or legatees in repayment of that part of their income intercepted, we find nothing in paragraph 12 of the decree of which the cross appellants can complain.

Cross appellants' cross assignment of error No. 4 relates to paragraph 13 of the decree. This paragraph reads:

"All other debts, claims and expenses of administration, except estate and other taxes above referred to, are due to be paid from the residue of the estate. In the event the residue is insufficient to pay such debts, claims and other expenses of administration, then the executor shall intercept income from all specific devises and bequests ratably until such debts, claims and other expenses are paid in full."

It is cross appellants' contention that the Chancellor erred in failing to provide that general bequests and devises should also be liable in proper order for the payment of all debts and claims against the estate, and expenses of administration, except estate and other taxes, in the event the residue is insufficient for such purposes, before the executor can rightfully intercept the income from specific devises and bequests to ratably meet such demands.

We think the omission of the Chancellor to provide for the abatement of the general devises and bequests to be used for the purposes set forth in paragraph 13, was a mere inadvertence or oversight.

Accordingly, paragraph 13 of the decree is hereby modified and revised to read:

All other debts, claims and expenses of administration, except estate and other taxes above·referred to, are due to be paid from the residue of the estate. In the event the residue is insufficient for such purpose, then such payments shall be made ratably from the general devises and bequests. In the further event that neither the residue and the general bequest and devises are insufficient for such purposes, the executor shall intercept the income from all specific devises and bequests and ratably pay such other debts, claims and expenses of administration from such intercepted income until the same are paid. If all of these sources furnish insufficient funds for the payment of the above mentioned other debts, claims, and expenses of administration, then the executor may resort to the corpus of the specific bequests and devises to the extent that the residue and general bequests and devises are insufficient for such needs."

Under cross assignment of error No. 5, the cross appellants assert that paragraph 14 of the decree is erroneous insofar as it restricts payment of income from the trust created in Item Five of the will.

Paragraph 14 of the decree reads:

"No further distributions to any legatees or devisees shall be made until all estate taxes have been paid and all loans made to pay estate taxes have been paid in full."

The thrust of cross appellants' argument is that the life income beneficiaries of the trusts are prevented by Paragraph 14 from receiving their incomes from the trusts provided for in Item Five of the will.

While such result is regrettable, it would seem to be necessarily dictated by the precise provisions of Item Ten of the will, and we hold that the Chancellor's conclusions as evidenced in Paragraph 14 of the decree were correct.

Under cross assignment of error No. 6, cross appellants assert the decree is faulty in failing to decree that income from the trusts created in Item Five of the will constituted a specific bequest.

The court, as before stated, decreed that the bequests under Item Five of the will were specific bequests. It would not seem to matter, therefore, that the income from the trusts was not specifically designated as a specific bequest. Counsel for cross appellants have demonstrated this in a preceding argument portion of their brief, with appropriate citations of cases, among which are Powell v. Labry, 210 Ala. 248, 97 So. 707, and Ullmann v. First National Bank of Mobile, 273 Ala. 154, 137 So.2d 765. We hold cross assignment of error No. 6 to be without merit.

We pretermit discussion of cross assignment of error No. 8, in view of our modification of paragraph 13 of the decree. Such modification together with Section 217, Title 61, Code of Alabama 1940, which provides that all property of the decedent (with certain exceptions not here applicable) is charged with the payment of decedent's debts, and, if necessary, may be sold for that purpose, obviates any consideration of this cross assignment of error.

**660**

The decree here appealed from, as modified, is due to be affirmed.

Modified and affirmed.

HEFLIN, C. J., and MERRILL, MAD-DOX and McCALL, JJ., concur.