Kenneth W. NEWBURY, Executor of the Estate of Kate E. Fults, Deceased, Plaintiff-Appellee,

v.

Thelma McCAMMANT, E. J. Watt, Elizabeth Tatem, Ardis Peterson, Harold Watt, Patricia Nagle, Billy Jean Michelson, Katherine Marline Felts, and Rose Watt, Defendants-Appellants,

Ray Fults, Clinton Fults, Fred Fults, Harold Fults, T. R. Fults, and Mrs. Arnold Edming, Defendants-Appellees.

No. 54062.

Supreme Court of Iowa.

Dec. 15, 1970.

Rehearing Denied March 9, 1971.

**148**

Finley & Teas, Mason City, for appellants.

Whitesell Law Firm, Iowa Falls, for appellee.

Johns, Flaherty, Harman & Gillette, LaCrosse, Wis., for defendants-appellees Harold Fults, T. R. Fults, and Mrs. Arnold Edming.

RAWLINGS, Justice.

By declaratory judgment action, Kenneth W. Newbury, executor of the estate of Kate E. Fults, deceased, seeks a construction of Articles VI and VII of decedent's will, more particularly as to whether the Article VI bequest adeemed. Trial court held it did and the property involved passed as residue. Adversely affected defendants appeal. We reverse.

Plaintiff executor takes no part in these appellate proceedings. The contest here is solely between two groups of defendants. For brevity, Article VI devisees will be sometimes referred to as appellants, Article VII residuary beneficiaries as appellees.

Testatrix, by Article VI of her will, dated June 23, 1961, directed certain described real property be sold by the executor and proceeds realized therefrom distributed to appellants or their respective relatives. By Article VII she directed the residue be distributed to appellees, three of whom do not participate herein. Subsequently testatrix executed two codicils which did not change the controverted articles.

September 16, 1966, testatrix entered into a contract for sale of the real estate described in Article VI, the sale price being $65,000, payable in installments of principal plus accrued interest, last payment due January 2, 1972. Time was of the essence and buyers took immediate possession. The contract is specifically made binding on the heirs, legal representatives, successors in interest and assigns of all parties.

In May 1968, testatrix died with $37,000 principal and $574.56 accrued interest owing on the contract. There was also $3,351.47 then on deposit in a bank, designated "Farm Account".

The basic issue presented on this appeal is propriety of trial court's holding that the Article VI gift stood adeemed.

Appellants concede, as to any sale proceeds intermingled by decedent with other assets, or otherwise used by her prior to death, the ademption concept applies. They claim, however, trial court erred in holding the unpaid portion of proceeds from sale of the supporting realty adeemed and must resultantly pass with the residue.

I. The problem at hand is neither new nor novel. Commissioners of Emperor Justinian, describing the Roman law of legacies, said:

"If a testator bequeath his own property, and afterwards alien, it is the opinion of *Celsus,* that the thing bequeathed will become due to the legatee, if the testator did not dispose of it, with an INTENTION to oust him. The emperors *Severus* and *Antoninus* have published their rescript to this effect; and they have also signified by another rescript that a legacy afterwards pawned or mortgaged, shall not be considered as retracted; and that the legatee may bring suit against the heir and oblige him to redeem. And, if but a part of the thing bequeathed be aliened, that part which remains unaliened, is still due; and that, which is aliened, is only due, if it appear not to have been aliened by the testator WITH A DESIGN to retract the legacy." (Emphasis supplied) Institutes, (T. Cooper, 3rd ed.), 2.20.12.

This reasoning formed a portion of ancient Roman law relative to destruction of legacies, differing in several respects from the ultimately evolved common law. Ademption by Extinction: Its Practical Effects, 18 Wis.L.Rev. 11.

Early common law scholars relied heavily on the Roman *Ademptio.* Resultantly the quoted passage, *inter alia,* constituted a substantial basis for the common law of ademption. Ademption by Extinction: Its Practical Effects, 18 Wis.L.Rev. 11, 15–33; The History of Ademption, 25 Iowa L.Rev. 290, 297; 6 Bowe-Parker: Page on Wills, § 54.1; 3 American Law of Property, (Casner ed.), § 14.13 at 606–607.

II. There has long been a divergence of opinion, however, as to proper operation or application of the ademption rule. Annot. 165 A.L.R. 1032. See The History of Ademption, 25 Iowa L.Rev. 290; 3 American Law of Property, (Casner ed.), § 14.13 at 607–608.

Historically the courts of this country, and England, in early times followed the dictates of Justinian, holding testator's intention crucial to operation of the doctrine. The History of Ademption, *supra* at 304; Ademption by Extinction: Its Practical Effects, *supra* at 15–18; 3 American Law of Property, (Casner ed.), § 14.03 at 607. There then came a period during which judicial tribunals encountered troublesome problems or witnessed opportunities for abuse in application of the pure intention theory. Seeking a practical solution, they held ademption occurred, regardless of testator's intention, if property specifically bequeathed was not found in the estate on death. See The History of Ademption, *supra* at 308–316; Ademption by Extinction: Its Practical Effects, *supra* at 18–19; cf. 6 Bowe-Parker: Page on Wills, § 54.15. We followed this strict identity theory in the case of In re Will of Miller, 128 Iowa 612, 105 N.W. 105 (1905), there holding a testamentary gift of proceeds to be realized from a postdeath disposition of specific realty was revoked by decedent's predeath sale of the supporting res, with mortgage taken for unpaid portion of the sale price. That position is adhered to in many jurisdictions. See 6 Bowe-Parker: Page on Wills, § 54.15. But this application of the doctrine was often harsh and frequently at odds with testator's intention. See *Id.* § 54.19; Ademption by Extinction: Its Practical Effects, *supra* at 25–26.

More recently we have therefore taken the position, at least sotto voce, the Justinian concept of intention is involved in ap-

plication of the ademption principle, coupled with reliance on identity of the thing bequeathed or devised. See In re Estate of Bierstedt, 254 Iowa 772, 775–778, 119 N.W.2d 234; In re Estate of Sprague, 244 Iowa 540, 546, 57 N.W.2d 212. See also The History of Ademption, *supra* at 316–317.

This appears to be entirely proper for it has long been held the primary consideration in will construction is intent of the testator. *E.g.,* In re Estate of Lamp, 172 N.W.2d 254 (Iowa); In re Estate of Sprague, *supra* 244 Iowa at 543, 57 N.W.2d 212; In re Estate of Keeler, 225 Iowa 1349, 1352–1354, 282 N.W. 362.

And we resort to technical rules or canons of construction only if the language of a will is clearly ambiguous, conflicting, or testator's intent is for any reason uncertain. *Ibid;* In re Estate of Staab, 173 N.W.2d 866, 870–871 (Iowa); In re Estate of Roberts, 171 N.W.2d 269, 271 (Iowa); Wagg v. Mickelwait, 165 N.W.2d 829, 831 (Iowa). Our adherence to this precept is evident in relatively recent ademption cases. See In re Estate of Bierstedt, *supra,* and In re Estate of Sprague, *supra.* See also In re Estate of Stonebrook, 258 Iowa 1062, 1073, 141 N.W.2d 531.

III. It was at one time necessary to distinguish between a testamentary gift of personalty and realty, the former adeeming, the latter being revoked by operation of similar principles. See In re Estate of Bierstedt, 254 Iowa 772, 774, 119 N.W.2d 234; In re Will of Miller, 128 Iowa 612, 105 N.W. 105; The History of Ademption, 25 Iowa L.Rev. 290, 290–296.

■ Both personal and real property are now, however, equally subject to ademption. In re Estate of Bierstedt, *supra*; 3 American Law of Property, (Casner ed.), § 14.13 at 612–613, n. 56. See The Code 1966. Section 633.3.

■ IV. In situations where there has been a devise or bequest of some specific property of which testator, while compe-

tent, dispossessed himself prior to death, this court has repeatedly held the gift adeemed. *E.g.,* In re Estate of Stonebrook, 258 Iowa 1062, 141 N.W.2d 531; In re Estate of Sprague, 244 Iowa 540, 57 N.W.2d 212; see In re Estate of Bierstedt, 254 Iowa 772, 119 N.W.2d 234. See also Stake v. Cole, 257 Iowa 594, 133 N.W.2d 714; In re Estate of Bernhard, 134 Iowa 603, 112 N.W. 86.

Those decisions are based on the premise that if identical property given is not found in the estate and testator intended other than ademption, he would have changed his will upon sale of the bequeathed or devised assets. *E.g.,* In re Estate of Sprague, *supra*; see In re Estate of Bierstedt, *supra*; cf. In re Estate of Bernhard, *supra.* The intention to adeem in such a situation is found within the four corners of the will by absence of the specifically devised or bequeathed property from the estate. Cf. In re Estate of Bernhard, *supra.*

We now reaffirm the principle enunciated in cases such as In re Estate of Bierstedt, and In re Estate of Sprague, both *supra,* regarding ademption of a testamentary gift in kind of specific property disposed of by a competent testator prior to death.

V. As a premise to further discussion it should be first noted, a will speaks as of date of death, prior thereto being fully ambulatory. In re Estate of Lundgren, 250 Iowa 1233, 1236–1237, 98 N.W.2d 839; In re Estate of Bernhard, 134 Iowa 603, 605–607, 112 N.W. 86; see The History of Ademption, 25 Iowa L.Rev. 290, 317–318.

■ Here the gift is of proceeds from specified realty to be sold upon testatrix' death.

By reason of directions to so sell, the equitable conversion doctrine became applicable. Thus the gift never had identity as specified realty. Rather, at the moment of death and all operative times, it was specific personalty. The Code 1966, Section

633.384; In re Estate of Sheeler, 226 Iowa 650, 661–662, 284 N.W. 799; In re Estate of Jackson, 217 Iowa 1046, 1050–1052, 252 N.W. 775; see In re Estate of Bernhard, *supra*. Stated otherwise, testatrix bequeathed an indefinite but identifiable sum to be realized from the sale of designated real estate.

It is to us clear, from the four corners of the will, testatrix intended by Article VI, this personalty be distributed to named beneficiaries.

VI. Unquestionably testatrix disposed of the supporting realty prior to death. Though she contractually retained and at time of death held a security interest, equitable title passed to the buyer. In re Estate of Lundgren, 250 Iowa 1233, 1236–1238, 98 N.W.2d 839; Junkin v. McClain, 221 Iowa 1084, 1089–1090, 265 N.W. 362; see Ingraham v. Chandler, 179 Iowa 304, 306–308, 161 N.W. 434; In re Estate of Bernhard, 134 Iowa 603, 606–607, 112 N. W. 86.

And, when testatrix entered into a contract for sale of the supporting real estate it was then, by operation of the aforesaid doctrine of equitable conversion, transmuted into personalty. See Briley v. Madrid Improvement Co., 255 Iowa 388, 394, 122 N.W.2d 824; In re Estate of Baker, 247 Iowa 1380, 1388, 78 N.W.2d 863; In re Estate of Bernhard, 134 Iowa 603, 606–607, 112 N.W. 86; 3 American Law of Property, (Casner ed.), § 14.13 at 611; cf. The Code 1966, Section 633.385(1).

Briefly stated, the remaining unpaid contractual proceeds are, (1) identifiable, (2) found in the estate, and (3) constitute identical property which testatrix intended should pass to appellants. As to such proceeds there is no ademption. See generally Wills-Ademption-Inapplicable Where Contract of Sale Follows Specific Devise of Land, 49 Iowa L.Rev. 623; 96 C.J.S. Wills § 1177h.

VII. With regard to any paid portion of the sale proceeds merged, however, with general assets of the estate or otherwise utilized or disposed of by testatrix prior to death, the rationale discussed in Bierstedt and applied in Sprague, both *supra*, governs. Resultantly the questioned gift stood adeemed *pro tanto*.

A partial ademption, i.e. *pro tanto*, is perfectly proper in such a situation. See 96 C.J.S. Wills § 1177h at p. 1004; Ademption by Extinction, 6 Wis.L.Rev. 229, 237. If testatrix intended otherwise she had ample opportunity, by changing her will, to so indicate.

In light of the foregoing we find, trial court erred in decreeing ademption as to remaining unpaid identifiable proceeds of the sale and now hold they must pass in accord with Article VI of the will. In other words, any balance owing at time of death on the contract to sell, including interest then due and thereafter accrued, does not here stand adeemed.

VIII. On the other hand, the $3,351.47 in a bank "Farm Account" is nothing other than general estate assets. Accordingly it cannot pass under Article VI.

IX. As previously indicated the facts in this case are much like those presented by In re Will of Miller, *supra*.

Trial court therefore understandably deemed Miller persuasive, if not controlling, at the same time observing the injustice of its application.

For reasons heretofore stated we agree with that observation and In re Will of Miller, 128 Iowa 612, 105 N.W. 105, is accordingly overruled insofar as inconsistent with this opinion.

X. This action was proper and not unnecessarily commenced by plaintiff Kenneth W. Newbury, as executor of the Estate of Kate E. Fults, deceased, to secure construction of the subject will. Costs attendant upon this appeal are therefore taxed to said estate. See Court Rule 23.

Reversed.

STUART, MASON, BECKER and UHLENHOPP, JJ., concur.

LeGRAND, J., MOORE, C. J., and LARSON and REES, JJ., dissent.

LeGRAND, Justice (dissenting).

The majority opinion overrules In re Estate of Miller, 128 Iowa 612, 105 N.W. 105, to hold there was no ademption and thus favor specific devisees over residuary beneficiaries in the distribution of certain assets.

The facts are simple. The testatrix provided that certain real estate should be sold by her executor and the proceeds distributed to the specific devisees. Later she sold that real estate under contract, upon which there was due at the time of her death approximately $37,000.00. The fight is over who shall have this sum. If there was an ademption, it goes to the residuary beneficiaries; if not, to the specific devisees.

The trial court held there was an ademption; the majority reverses. I believe the trial court was right and would affirm.

An ademption occurs when property which is the subject of specific bequest in a will is disposed of by the testator after the execution of the will so that at his death the property is not part of the estate.

I take the majority opinion to concede the contract sale here would work an ademption except for the provision of the will which, instead of leaving the property to the devisees outright, directs the executor to sell the real estate and distribute the proceeds to those designated by the testatrix.

The sole question for determination is whether this prevents ademption and entitles the specific devisees to the proceeds of the contract.

We have made an exception in the case of an involuntary sale where property is sold by court order in guardianship proceedings because this reflects no intention on the part of the incompetent testator to have the property adeemed. See In re Estate of Bierstedt, 254 Iowa 772, 119 N.W. 2d 234. However, we have not heretofore held the present circumstances to come within that rule.

The problem involves the difficult determination of the testator's intent at the time of the execution of the will. We have said this is to be gathered from the four corners of the will. But we must also consider how his later conduct manifests a change of testamentary intent. The problem therefore is two-fold: what was the intent at the time the will was made, and does the later sale show a change of that intent?

In this case, five years after the execution of the will the testatrix sold the real estate which she had set aside for specific persons. The majority says this worked an equitable conversion, but since that is what would have happened anyway at her death, the sale merely accelerated the time when the equitable conversion was accomplished thereby substituting the proceeds from the sale for the real estate as the subject of the specific bequest.

This is completely at odds with In re Estate of Miller, supra, and the majority correctly concludes that the Miller case must be overruled in order to justify the conclusion it reaches here.

I believe the majority unnecessarily upsets established principles without any substantial hope of accomplishing better results than those which obtained during the 65 years since the Miller opinion.

Obviously the testatrix's intention at the time she made the will was that she would continue to own the real estate until her death. She provided it should then be sold and the proceeds distributed. Later, for reasons of her own, she sold that property under contract and received the proceeds as installment payments were made. As to those payments received by her during her

lifetime, ademption is allowed. As to the amount remaining due on the contract at her death, it is denied. Because she died *before* payments were completed, the majority says she intended that any remaining balance unpaid on the contract would inure to the benefit of the specific devisees. If, on the other hand, she had died after the maturity of the contract, they would be entitled to nothing. This seems to me to be an entirely illogical extension of the ademption rationale.

How could the accidental date of her death conceivably affect testatrix' intention with regard to the specific bequest? Under the majority's theory if the testatrix had lived until 1972, when the contract matured, there would be an ademption because the total contract payments would have then been made to testatrix. But because she died in 1968, the majority finds she intended any balance remaining unpaid on the installment contract should belong to devisees under the specific bequest heretofore described.

As the majority correctly says, a will speaks only from the date of death. Until then it is ambulatory. At the date of death here the provisions which testatrix had made for appellants could not be carried out because the property from which they were to receive the proceeds was not a part of the estate. To say that the testatrix merely performed in advance those duties which the executor would otherwise have been required to discharge at her death, and that the result is exactly the same, seems to me to avoid the whole theory of ademption.

The majority opinion raises a number of interesting possibilities. I realize courts frequently remind themselves to decide only the case at hand and not engage in "what if" speculation. However, I cannot avoid that temptation here. What if, for instance, instead of selling this real estate on contract, the testatrix had traded it for another piece of real estate. At her death would the substitute real estate go to the specific devisees or would the gift be adeemed? Or, what if she had first traded the real estate described in the will for other real estate and then sold the new property on contract with an unpaid balance outstanding at the time of her death. Could those funds be used to satisfy the specific bequest or would they be part of the residuary estate? Or, what if, instead of selling on contract, testatrix had conveyed her real estate and taken back a note and mortgage for the unpaid balance, part of which remained due at her death. Would the devisees then be entitled to claim the amount remaining unpaid under the note and mortgage?

Admittedly any rule which attempts to determine the intent of one now deceased is at best imperfect. That is true of the one by which we have lived in the past; it is equally true of the one the majority today adopts.

If we were starting anew here, perhaps the majority opinion would represent the best choice. But we already have a rule which has been long relied on by lawyers and their clients. Arguably the instances of injustice under it are no greater than under the proposed new one. It would merely result in different cases.

I am not persuaded that we should overrule the Miller case. I would affirm the trial court.

MOORE, C. J., and LARSON and REES, JJ., join in this dissent.