In the Matter of the ESTATE OF Jacob WOLFF, Sr., Deceased.

No. 14182.

Supreme Court of South Dakota.

Argued Nov. 29, 1983.

Decided May 9, 1984.

Lonnie F. Bryan of Wallahan Law Offices Rapid City, for appellants Arthur and Erwinn Wolff.

George Beal, Rapid City, for appellee Jacob Wolff, Jr.

WOLLMAN, Justice.

This is an appeal from a decree of distribution and an order entitled "Decision of the Court" which held that there had been an ademption of certain devises of land in decedent's will. We affirm.

Jacob Wolff, Sr., (decedent) accumulated approximately 2,800 acres of farm land in Perkins County in South Dakota. When decedent and his wife moved to California in 1950, his three sons, Jacob Jr., Arthur, and Erwinn, remained on the farmland. Jacob Jr., who had been farming 762 acres known as the "home place" with Erwinn, left South Dakota in 1957.

In 1971 decedent executed a will which provided that in the event his wife should predecease him, his estate should pass to his sons "equally, share and share alike." In 1972, decedent and his wife deeded 1,000.16 acres of the Perkins County land to Arthur for consideration of "one dollar and other good and valuable consideration." In 1973, decedent and his wife deeded 1,040 acres of the Perkins County land to Erwinn for the same consideration. The tracts of land deeded to Erwinn and Arthur and the remaining 762 acres were of approximately the same value.

Prior to deeding the two tracts of land to Erwinn and Arthur, decedent, who was born to immigrant parents and was not proficient in English, wrote the following to Jacob Jr. in a letter dated September 14, 1972:

I had sent Arthur and Erwinn the Deed for their land. So from now on they did not have to send anymore rent from the land that is Deeded to them and about your land, I don't know yet. See how it is turning out. Erwinn can buy it or rent for cash, from now on. Or what did you think? I thought if Erwinn buys it I can make the Deed to him. If he rents for cash I make the Deed to you. It is 760 acres of land. All the land on the South side of the road Sec 3—Sec 4—Sec 5— Sec 9—and Sec 10. So he buy it, I deed it to him. If he rent it, he got to rent it for cash. But if you want it to deed it to you, I will do it? Say it the you like it best.

Decedent's wife died in 1974, and Erwinn moved to California to live with decedent. Arthur's son, Lynn, then took possession of the home place.

Decedent died in 1980 at the age of eighty-six. His will was admitted to probate in California, and with the exception of the land in Perkins County, South Dakota, decedent's estate was distributed in equal shares to his three sons pursuant to the California probate decree. The will was later admitted to probate in South Dakota. The circuit court concluded that decedent's delivery of the warranty deeds to Erwinn and Arthur, when considered in light of decedent's September 14, 1972, letter to Jacob Jr., constituted an ademption of their share of the South Dakota property.

■ "Ademption" is the term that describes either the act which makes inoperative a devise or bequest of specific property by the sale or extinction of the property during the testator's lifetime or, as is applicable to the case at hand, the satisfaction of a devise or bequest by money payment or delivery or conveyance of property to a beneficiary prior to the testator's death.

*In re Estate of McClow,* 205 Neb. 739, 290 N.W.2d 186 (1980). (For an excellent review of the history and development of the doctrine of ademption, *see Newbury v. McCammant,* 182 N.W.2d 147 (Iowa 1970).)

The statutes regarding ademption are exclusive, and we therefore need not address common law rules and principles. *In re Iversen's Will,* 80 S.D. 20, 118 N.W.2d 17 (1962).

Although there is authority that ademption applies only to specific legacies, *see, e.g., Samford v. First Alabama Bank of Montgomery,* 431 So.2d 146 (Ala.1983); *Mills v. Mills,* 279 So.2d 917 (Miss.1973), SDCL 29–6–14 * allows for ademptions of general legacies if an intention to adeem is expressed by the testator in writing.

■ The doctrine of ademption applies to both bequests of personality and devises of realty. *In re Estate of Krotzsch,* 60 Ill.2d 342, 326 N.E.2d 758 (1975); *Newbury v. McCammant, supra; Von Steinner v. Sorrell,* 259 Md. 228, 269 A.2d 604 (1970). Arthur and Erwinn contend, however, that SDCL 29–6–14 does not apply to the case at hand because the will involves a devise of realty and the statute refers to legacies. Arthur and Erwinn interpret "legacies" as referring only to bequests of personality.

■ Strictly construing the terms, "legacy" is defined as a gift or bequest by will of personality, whereas "devise" is defined as a testamentary disposition of real estate. *Festorazzi v. First Nat'l Bank of Mobile,* 288 Ala. 645, 264 So.2d 496 (1972). The term "legacy," however, as conceded by Arthur and Erwinn in their brief, is often used loosely to refer to both bequests of personal property and devises of realty. Words used in the South Dakota Codified

Laws are to be understood in their ordinary sense and statutes are to be liberally construed with a view to effect their objects and to promote justice. SDCL 2–14–1; SDCL 2–14–12; *Independent Community Bankers Ass'n v. State,* 346 N.W.2d 737 (S.D.1984). SDCL ch. 29–6 does not deal exclusively with personal property, and we can envision no rationale excluding devises of realty from the statute relating to ademption. Accordingly, we decline to restrict the word "legacies" as used in SDCL 29–6–14 to its technical meaning.

■ Arthur and Erwinn contend that because the provision in decedent's will leaving his estate to his three sons created a residuary rather than a general legacy, SDCL 29–6–14 is inapplicable. This contention is based on the fact that decedent's will contains a clause directing the co-executors to pay debts, charges, and administration expenses. We need not discuss the status of a residuary legacy under SDCL 29–6–14 because it is obvious that the provisions of SDCL 29–6–1 through SDCL 29–6–6 make the legacy in issue general in nature. SDCL 29–6–5 defines "residuary legacy" as embracing "only that which remains after all the bequests of the will are discharged." Decedent's will contained no bequests or devises other than the provision giving decedent's entire estate to his three sons. This provision, therefore, does not constitute a residuary clause regardless of the provision regarding payment of debts, charges, and administration expenses. *See In re Mathie's Estate,* 64 Cal. App.2d 767, 149 P.2d 485 (1944).

Arthur and Erwinn contend that the requirement in SDCL 29–6–14 that the testator express his intention to adeem was not satisfied by decedent's September 14, 1972,

---

* SDCL 29–6–14 provides:

Advancements or gifts are not to be taken as ademptions of general legacies, unless such intention is expressed by the testator in writing.

We also note that SDCL 29–3–11 provides:

If the instrument by which an alteration is made in the testator's interest in a thing previously disposed of by his will, expresses his intent that it shall be a revocation, or if it contains provisions wholly inconsistent with the terms and nature of the testamentary disposition, it operates as a revocation thereof unless such inconsistent provisions depend on a condition or contingency by reason of which they do not take effect.

*See In re Iversen's Will, supra; Ansted v. Grieve,* 57 S.D. 215, 231 N.W. 912 (1930), *aff'd,* 58 S.D. 245, 235 N.W. 648 (1931).

letter. In interpreting a statute similar to SDCL 29–6–14, the Supreme Court of California held:

It is the established rule that no special form, nor even the signature of the decedent, is required to constitute a charge of the advancement in writing as prescribed by such statutes. It will be sufficient if it appears that the writing was done by the decedent and shows the intent to charge the money or property given as an advancement rather than as a gift or loan. Unsigned statements in the form of a charge entered in a book or on leaves inserted at the back of a book of miscellaneous accounts, the circumstances being such as to exclude the idea that it was charged as a debt, have been held sufficient.

*In re Estate of Hayne,* 165 Cal. 568, 573, 133 P. 277, 279 (1913). As stated by another California court in a later case,

No gift may be taken as an advancement or as an ademption of a general legacy unless such intention is expressed in the writing of the testator or the donee.... No certain words or form of writing is required to constitute an advancement, rather than a gift or loan, so long as the writing was done by the decedent and shows that the intent was to charge such gift or loan against the portion of the estate which the donee or debtor would otherwise have taken under the will or the laws of succession.

*In re Estate of Nielsen,* 169 Cal.App.2d 297, 303, 337 P.2d 87, 91 (1959); *see also In re Estate of Hoefflin,* 176 Cal.App.2d 619, 1 Cal.Rptr. 642 (1959).

■ In the letter to Jacob Jr., decedent writes of sending Arthur and Erwinn the deed for "their land," and then refers to the remaining property as "your land." The land deeded to Arthur and Erwinn is contiguous with the respective tracts already owned by them. Moreover, after taking into account the disparity in the per acre value assigned to the several tracts, the land deeded to Arthur and Erwinn had a value closely approximating the value of the remaining 760 acres claimed by Jacob

Jr. Given these facts, we conclude that the circuit court did not err in determining that the letter satisfied the writing requirement contained in SDCL 29–6–14.

■ Arthur and Erwinn contend that the circuit court erred in finding that there was no consideration for the land deeded to them by decedent and in treating the transfers of land as gifts. Arthur testified at the hearing on the final decree of distribution that from 1952 until he received the deed to the Perkins County land he paid the taxes on and paid decedent one-fourth of the farm income from his portion of the land. No percentage of the profits or any other payment was made to decedent for running cattle on the land. Erwinn, who did not testify, apparently had the same or a similar arrangement. Arthur also testified that he had made improvements on the land by having a well dug and by placing fences where he was keeping cattle. Arthur and Erwinn argue that the payment of taxes and percentage of income as well as the making of improvements constituted good and valuable consideration. The payments made to decedent, however, were characterized by him in his letter to Jacob Jr. as rent. In addition, the deeds to Arthur and Erwinn are stamped as exempt from the real estate transfer fee. After reviewing the evidence we cannot say that the trial court's finding with regard to consideration was clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger,* 85 S.D. 282, 181 N.W.2d 455 (1970).

■ Decedent provided in his will that should a beneficiary contest the validity of the will, such beneficiary would forfeit his share of the estate. Arthur and Erwinn maintain that by opposing their petition for the sale of the 762 acres of South Dakota land and by raising the issue of ademption, Jacob Jr. was disputing the validity of decedent's will. We disagree. Jacob Jr. was not claiming the will was invalid, but rather was correctly asserting that a portion of the devise under the will had been satisfied.

Any issues or sub-issues not discussed in this opinion have been considered and have been found to be without merit.

The decree is affirmed.

FOSHEIM, C.J., and DUNN and MORGAN, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Although I agree with the treatment of the issues by the author and accordingly concur in the results of the case, I rebel at the citation of *Independent Community Bankers Ass'n v. State*, 346 N.W.2d 737 (S.D.1984) as authority. Ostensibly, that case stands for the proposition that "[w]ords used in the South Dakota Codified Laws are to be understood in their ordinary sense and statutes are to be liberally construed with a view to effect their objects and to promote justice."

In my opinion, *Independent Community Bankers Ass'n v. State* is an execrable decision which prostituted our state constitution and, when washed upon the sands of time, shall go down in constitutional infamy.

The entire purpose of Senate Bill 256 of the 1983 South Dakota Session Laws, as outlined in Section 1, was supposedly to generate income for South Dakota's economy. Senate Bill 256, a bill sponsored by the Governor of this State, has absolutely nothing to do with promoting justice and I bitterly resent Senate Bill 256 being equated with justice. Economics, yes—justice, no. The South Dakota Legislature approved Senate Bill 256 which allowed national bank holding companies to acquire

state bank charters in South Dakota and to then buy or start insurance companies.*

Apparently, the author would cite *Independent Community Bankers Ass'n* as authority, also, for a "liberal construction" of statutes to effect their objects. It is true that *Independent Community Bankers Ass'n* cites two cases in this Court relative to a liberal construction of title and subject matter. However, those two cases pertain to construction of a statute from a standpoint of determining its constitutionality. Constitutionality of a statute is not in question in this ademption case and to cite *Independent Community Bankers Ass'n* somehow, someway, as authority is fallacious.

---

* Several out-of-state national bank holding companies, upon passage of Senate Bill 256, immediately began to make overtures to purchase small South Dakota banks. In some instances, overtures became reality. On January 5, 1984, the Board of Governors of the Federal Reserve System issued an official statement relative to applications to acquire state-chartered banks in South Dakota, the gist of which is that " * * * the Board reached the tentative judgment that it could not approve the proposed bank acquisitions in view of present law and expressions of

Congressional intent, subject to any further consideration by the Congress." Thereupon, the applicants (out-of-state national banking corporations) " * * * requested the Board to suspend the processing of their applications." *Id.* at 2. Though the State Legislature and the South Dakota Supreme Court have spoken, the patchwork of state and federal banking ownership and operation, tied in with a new insurance law in this state, hibernates. *Independent Community Bankers Ass'n,* as authority to decide this case, is not germane.