In the Matter of the ESTATE OF Pearl SWOYER, Deceased.

No. 16273.

Supreme Court of South Dakota.

Considered on Briefs March 22, 1989.

Decided May 3, 1989.

Wayne D. Groe of Stickney & Groe, Elk Point, for appellant, Eldean Swoyer.

Robert B. Frieberg of Frieberg, Peterson & Travis, Beresford, for appellee/executrix Jacqueline Swoyer; Thomas H. Frieberg of Frieberg, Peterson & Travis, Beresford, on the brief.

SABERS, Justice.

Eldean Swoyer (Eldean) appeals a decree of distribution of the estate of Pearl Swoyer (Pearl), based on a claim of ademption.

### Facts

The parties stipulated to the facts pursuant to SDCL 15–26A–55.

Pearl died testate on June 24, 1985, at the age of 104. Pearl and her husband, John Swoyer (John), operated a farm near Richland, South Dakota, and had four children, Eldean, Golda, Teressa, and James. John died intestate in 1951. Under the intestate laws, Pearl received one-third of the estate, with a life estate in the remaining two-thirds. Eldean, Golda, and James each received two-ninths' interest subject to Pearl's life estate. Teressa predeceased her father without children.

James attended college for a period of time, but returned to operate the farm when his father's health failed. Upon returning, James married Marcella Ludeman (Marcella). They had four children, Jacqueline, Jill, Jerri, and James. Marcella died when the children ranged from age ten to sixteen. Shortly thereafter, James took a job away from the farm and was absent from home during the week. During this time, Pearl cared for her grandchildren and managed the farm with their help. In 1959, James remarried and maintained a home in Redfield, South Dakota, though he returned to the farm on weekends until the children were grown. Pearl and the children continued to live on the farm until the children were grown and completed their educations in 1974.

James died in 1974. Shortly thereafter, Pearl made her last will and testament. Under paragraph two of the will, Pearl specifically devised her interest in the farm to her four grandchildren. Pearl remained on the farm, but spent two winters with her grandchild, Jacqueline, in St. Paul, Minnesota. In 1980, Pearl's mental and physical health began to fail. On November 14, 1980, Eldean was appointed Pearl's guardian following his petition for letters of guardianship. Eldean cared for Pearl

until 1981 when she went to a nursing home in Akron, Iowa. She resided there until her death.

In 1982, Eldean, as guardian, petitioned to have the farm sold. This was approved by the court and completed in December 1982. Approximately $126,000 was placed into the guardianship account from the sale of Pearl's interest in the farm. At the time of her death, approximately $105,000 remained in the account. From the time of the petition for sale, until her death, Pearl was mentally incompetent.

Pearl's will was admitted to probate on October 8, 1985. Jacqueline was appointed executrix. On December 1, 1986, she filed a final account and petition for distribution, which distributed the proceeds from the sale of Pearl's farm to the four grandchildren under paragraph two of the will. Eldean objected, claiming the proceeds should be distributed under the residuary clause of the will. The residuary clause would have distributed the proceeds to Eldean, one-third, Golda, one-third, and the remaining one-third to the four grandchildren. The trial court distributed the remaining sale proceeds to Pearl's grandchildren under paragraph two of the will. Eldean appeals from the decree of distribution entered April 26, 1988. We affirm.

*Whether a guardianship sale on behalf of an incompetent person works an ademption of specifically devised property.*

Eldean claims that the guardianship sale of the farm resulted in an ademption of the specific devise to the four grandchildren. He argues that the farm no longer exists as part of the estate and the devise must fail.

■ Ademption has been defined as "the act which makes inoperative a devise or bequest of specific property by the sale or extinction of the property during the testator's lifetime...." *Matter of Estate of Wolff,* 349 N.W.2d 33, 34 (S.D.1984). We have held that the ademption statutes are exclusive and that we need not address common law rules. *Wolff, supra; Matter of Iversen's Will,* 80 S.D. 20, 118 N.W.2d

17 (1962). However, the ademption statutes contemplate an act by the testator which shows an intent to adeem or revoke a particular disposition of property. *See* SDCL 29–3–10; SDCL 29–3–11; SDCL 29–3–12. These statutes do not address a situation where a testatrix is mentally incompetent from before the time her property was sold until her death.

Eldean relies upon SDCL 29–6–2, which provides:

> A legacy of a particular thing, specified and distinguished from all others of the same kind, belonging to the testator, is specific; if such legacy fails, resort cannot be had to the other property of the testator.

Eldean claims that this statute should be liberally construed to define legacy as including real property. However, the terms of a statute must be given their plain meaning and effect. *AT & T Information Systems v. South Dakota Bd. of Equalization,* 405 N.W.2d 24 (S.D.1987). Legacy is generally defined as a gift or bequest of personal property. *Black's Law Dictionary* 802 (5th ed.1979). The devise of real property in this case was not a legacy within SDCL 29–6–2.

■ Jurisdictions which have considered this question have generally followed two lines of authority. Annotation, *Ademption or revocation of specific devise or bequest by guardian, committee, or conservator of mentally or physically incompetent testator.* 51 A.L.R.2d 770 (1957). A minority apply the "identity test" which considers only whether the property is part of the testator's estate at the time of death. *Id.* If the property is not among the decedent's assets, there has been an ademption. *Matter of Estate of Barry,* 208 Okla. 8, 252 P.2d 437 (1952). The majority of jurisdictions consider the testator's intention as material and a testamentary gift is adeemed only where it appears that such was the testator's intent. 51 A.L.R.2d 770, *supra.* The courts focusing on the testator's intent hold that there is no ademption where the testator becomes incompetent and the subject matter of a specific bequest or devise is sold by a guardian. *Matter of*

*Estate of Graham,* 216 Kan. 770, 533 P.2d 1318 (1975); *Stake v. Cole,* 257 Iowa 594, 133 N.W.2d 714 (1965); *Matter of Estate of Warren,* 81 N.C.App. 634, 344 S.E.2d 795 (1986); 6 W. Bowe & D. Parker, *Page on Wills* § 54.18 (1962).

■ We agree with the majority rule under these circumstances. An incompetent testator cannot form the intent to adeem the property or avoid the effect of an unwanted ademption with a new will. *Graham, supra; Matter of Estate of Mason,* 62 Cal.2d 213, 42 Cal.Rptr. 13, 397 P.2d 1005 (1965).

> Where the testator is competent and disposes of the subject of the gift, the gift is adeemed; where the testator is incompetent and the subject of the gift is sold by a guardian with court approval, the gift is only adeemed to the extent the proceeds are used for care and maintenance of the ward. The only question of intention involved is the opportunity of the testator to change the will. This opportunity is denied the incompetent testator.

*Matter of Estate of Wolfe,* 208 N.W.2d 923, 924 (Iowa 1973) (*Quoting In re: Estate of Bierstedt,* 254 Iowa 772, 775, 119 N.W.2d 234, 236 (1963)).

■ The one limitation upon the testator's intent is that only the unspent proceeds of the sale may pass in lieu of the property specifically devised. *Graham, supra.* As stated in *Stake, supra* 133 N.W.2d at 717, "the devise is adeemed only to the extent proceeds of the sale are used for care and maintenance of the ward and expenses of the guardianship." Similarly, only the proceeds not spent for Pearl's care should pass under paragraph two of the will.

■ The emphasis on the testator's intent to adeem is consistent with both statutory and case law in this state. SDCL 29–5–1; *Matter of Estate of Modde,* 323 N.W.2d 895 (S.D.1982); *Matter of Estate of*

*Bock,* 85 S.D. 113, 177 N.W.2d 734 (1970). The intent of a testator should be given effect through the expressions in the will and with the aid of surrounding circumstances. *Modde, supra.* Pearl's intent was to bequeath the estate to her four grandchildren she helped raise. The guardian's sale of this property should not be permitted to frustrate this intent where Pearl lacked testamentary capacity to conform her will to the guardian's actions. A contrary holding would lead to inequitable results.

The results of the rule that sale, collection, and the like by guardian of an incompetent person operates as an ademption have been very unsatisfactory. A guardian who is hostile to one of the beneficiaries may adeem the gift to him by a sale of the property, or by collection of a debt. If he is friendly to one to whom a general gift is made or to whom a general residuary gift is given, he may increase the amount of such gift by converting the property into the form which is given to such beneficiary.

*Page on Wills, supra,* § 54.18. Although there is no such claim against the guardian in this case, the quotation points out the weakness of the minority rule.

■ We hold that where the testator becomes incompetent following the execution of a will and a guardian sells property specifically devised by the will, the proceeds from the property remaining at the testator's death are not adeemed.

Affirmed.

All the Justices concur.