# IN THE COURT OF APPEALS OF IOWA

No. 24-1247
Filed September 4, 2025

**IN THE MATTER OF THE MEYERS FAMILY REVOCABLE TRUST**

**CARL GORMAN MEYERS and TERESA RENEE WOODLEY, Appellants.**

_____

Appeal from the Iowa District Court for Lee (North) County, Clinton R. Boddicker, Judge.

Potential beneficiaries of a trust appeal the district court's order finding the devise to one of the beneficiaries adeemed. **AFFIRMED AS MODIFIED.**

Ryan D. Gerling of Cray Law Firm, PLC, Burlington, for appellants.

Timothy B. Gulbranson and Jenny L. Juehring of Lane & Waterman LLP, Davenport, for appellee.

Considered by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

This case is before us a second time. Siblings Teresa Woodley, Lora Hickey, and Carl Meyers disagree about how assets from The Meyers Family Revocable Trust (the Trust)—a trust established by their parents, Cathy and Paul Meyers—should be distributed.

## I. Factual and Procedural Background

The underlying facts of this case are undisputed and were thoroughly summarized the first time this case was before our court. *See In re Meyers Fam. Revocable Tr.*, No. 22-0866, 2023 WL 3335996, at *1–3 (Iowa Ct. App. May 10, 2023). So we will not repeat them, but we will highlight the important ones.

Paul and Cathy Meyers executed wills and the agreement creating the Trust on the same day in 2012. At that time, Paul and his son Carl each owned fifty percent of the shares of Meyers & James Construction Company, Inc. (the Company). Paul and Cathy's wills provided that all property each of them owned when they died would pass to the Trust and be distributed in accordance with the terms of the Trust agreement. In relevant part, the Trust agreement provides that, after both Paul and Cathy's deaths, "[a]ll right, title, and interest in and to [the Company] shall be distributed to Carl Gorman Meyers if he is living at said time." All remaining assets are to be distributed in equal shares to the three children.

In 2017, Paul and Carl entered a stock purchase agreement (Purchase Agreement) whereby Paul sold his shares of stock in the Company to Carl for $374,449.90. To satisfy the purchase price, Carl immediately paid Paul $50,616.56 and executed a promissory note payable to Paul for the balance of $323,833.34 (the Note). To secure payment of the Note, Carl also executed a

security agreement giving Paul a security interest in "[a]ll of [Carl]'s right, title and interest in [the Company]."

About three years after he sold his shares of the Company to Carl, Paul died, and Cathy died a few months later. All their assets passed to the Trust. Paul and Cathy's three children became co-trustees of the Trust, but Lora eventually resigned, leaving Carl and Teresa as co-trustees.

A dispute developed between the three siblings regarding Carl's obligation to pay the remaining balance on the Note to the Trust. Carl and Teresa took the position that Carl had no such obligation, and Lora took the position that he did. Due to the dispute, the Trust's attorney filed an application invoking the court's jurisdiction. Shortly thereafter, Carl and Teresa, as co-trustees, executed a document declaring that the Trust "shall not assert that any amounts are owed to the Trust by [Carl] for Carl['s] previous purchase of [the Company]." In response, Lora filed a petition against Carl and Teresa alleging a breach of trust and unjust enrichment. Lora also sought attorney's fees.

Lora filed a motion for summary judgment. Even though Lora hadn't argued that the bequest of the interest in the Company adeemed because Paul (and, after Paul's death, the Trust) no longer owned any such interest, the district court granted Lora's motion based on ademption and awarded attorney fees. Carl appealed. Our court reversed and remanded for further proceedings because the district court granted summary judgment based on ademption, an issue not raised in Lora's motion for summary judgment. *Id.* at *4.

On remand, Lora filed an amended petition alleging "breach of trust—duty of loyalty and impartiality" (count I), "breach of trust—objection to accounting"

(count II), "unjust enrichment" (count III), and requesting attorney fees. Then she filed a motion for partial summary judgment in her favor on count I or, alternatively, on count III, and on her request for attorney fees. This time Lora raised an ademption argument supporting her motion.

The district court granted Lora's motion, agreeing that the bequest to Carl had adeemed, determined Carl and Teresa breached their fiduciary duties as co-trustees by seeking to avoid Carl's obligation to pay the Trust the balance of the Note, removed Carl and Teresa as co-trustees, and ruled that Lora would be awarded attorney fees payable by Carl and Teresa individually upon Lora's submission of an attorney fee affidavit. Following Lora's submission of an attorney fee affidavit, the court ordered Carl and Teresa to each pay Lora $19,133.43 in attorney fees. Carl and Teresa appeal. Lora asks us to affirm and to order Carl and Teresa to pay her appellate attorney fees.

## II.     Discussion

Carl and Teresa raise three issues on appeal. They contend: (1) the district court erred in concluding that the bequest to Carl of "[a]ll right, title, and interest in and to [the Company]" adeemed; (2) the district court erred in concluding that Carl and Teresa breached their fiduciary duties by declining to enforce the Note; and (3) the district court erred in its award of attorney fees to Lora. We address each issue in turn.

### A.     Ademption

We review the district court's grant of summary judgment for correction of errors at law. *Villarini v. Iowa City Cmty. Sch. Dist.*, 21 N.W.3d 129, 133 (Iowa 2025). Summary judgment is proper only when there are no genuine issues

of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In considering a motion for summary judgment, we view the facts in the light most favorable to the nonmoving party, including giving the nonmoving party every legitimate inference that can be drawn from the record. *Id.*

Resolution of the dispute in this case, of course, calls for us to address whether the Trust's provision devising the interest in the Company to Carl adeemed. More specifically, we are called upon to determine whether the Note and security interests that Paul received in exchange for selling his shares in the Company amount to an interest in the Company that Carl is entitled to receive. If not, then the provision of the Trust devising the interest in the Company adeemed. If Carl receives the Note, it will effectively eliminate his obligation to pay the Trust the remaining balance owed on the Note, resulting in the Trust not receiving the balance of the Note to distribute equally to the three siblings.

"[W]e have defined ademption as 'a taking away' and generally use it to refer to removing or eliminating a specific bequest from a will or trust before the death of the testator." *In re Steinberg Fam. Living Tr.*, 894 N.W.2d 463, 465 n.1 (Iowa 2017) (citing *In re Est. of Anton*, 731 N.W.2d 19, 23 (Iowa 2007)). "An ademption occurs by '[t]he destruction or extinction of a testamentary gift by reason of a bequeathed asset's ceasing to be part of the estate at the time of the testator's death.'" *Id.* (quoting *Ademption*, *Black's Law Dictionary* (10th ed. 2014)).

We begin our analysis of this issue by rejecting three of Carl and Teresa's arguments. First, we reject their contention that the Trust provision devising the interest in the Company to Carl is not a specific bequest. The fact that the provision states "[a]ll right, title, and interest in and to [the Company]" instead of simply "all

shares of the Company" doesn't make the bequest any less specific. The fact remains that the provision attempts to devise a specific item, namely all interest in the Company. This is a specific bequest.

Second, we reject their contention that we cannot consider the Purchase Agreement. Their contention is based on the legal principle that extrinsic evidence cannot be considered to interpret the Trust provision at issue. But we do not look to the Purchase Agreement to shed light on what that provision means. We look to the Purchase Agreement as proof that Paul sold his shares of the Company to Carl more than three years before Paul and Cathy died—facts that are undisputed. Ademption, by its nature, involves an asset owned by a testator or trustor when the applicable conveying instrument is executed that is no longer owned when the time comes for distribution. Given this fact, we must consider evidence of what happened to the asset to determine whether the bequest adeemed. That is why we consider the Purchase Agreement and why we reject Carl and Teresa's contention that we cannot.

Third, we reject the claim that the Note is some type of right or interest in the Company such that the Trust provision devising "[a]ll right, title, and interest in and to [the Company]" to Carl applied to the Note. The Note is no such thing. Paul sold his entire interest in the Company to Carl. In return, he received money and a promise for more money (i.e., the Note). The Note is part of the proceeds of Paul's sale of his shares of stock in the Company to Carl; it is not a right or interest in the Company.

With the rejection of those arguments in mind, we turn to the crux of the matter. The Trust provision in question requires the Trust to distribute to Carl "[a]ll

right, title, and interest in and to [the Company]."  Except for security interests securing the Note—a topic we address later—we conclude that Paul owned no right, title, or interest in the Company at the time of his death, so no such right, title, or interest passed to the Trust.  Therefore, the Trust had no such right, title, or interest to distribute to Carl.  But that does not fully resolve the dispute, as we still need to determine whether the gift failed by ademption or Carl is entitled to the proceeds of Paul's sale of his shares of stock in the Company—namely the Note—as a substitute for the interest in the Company itself.

Ademption occurs when an item of specifically bequeathed property is not in the estate (or, in this case, a trust) at the time of the testator's death.  *Steinberg*, 894 N.W.2d at 468.  In that event, the bequest is adeemed, or "taken away."  *Id.* That is what happened here.  The Trust agreement provided that, upon the death of Paul and Cathy, "[a]ll right, title, and interest in and to [the Company]" was to be distributed to Carl.  But, except for a security interest, the Trust owned no such property.  Carl and Teresa argue that the Note is simply a different form of Paul's ownership of shares of stock of the Company.  But, as noted previously, the Note is proceeds from the sale of the shares of stock, but it is not any type of ownership interest in the Company.

Our supreme court has repeatedly rejected the argument Carl and Teresa make here that Carl should receive a substitute asset (i.e., the Note) when the asset he was bequeathed (i.e., interest in the Company) is no longer owned by the testator.  For example, in *In re Estate of Sprague*, the testator's will and codicil bequeathed a specific parcel of real estate to her stepdaughters, but the testator sold the real estate on contract before she died.  57 N.W.2d 212, 214 (Iowa 1953).

Despite the fact that the contract was clearly proceeds of the sale of the real estate, the court found that the gift of the real estate adeemed and the stepdaughters were not entitled to the proceeds from the sale (i.e., the contract), noting that "the subject matter of the devise was a tract of real estate and not a contract to sell real estate." *Id.* at 216–17. The same is true here. The subject matter of the devise to Carl was an interest in the Company and not a note from the sale of that interest.

Similarly, in *In re Estate of Keeler*, the testator's will bequeathed to her son a note secured by a mortgage on a parcel of real estate. 282 N.W. 362, 363–64 (Iowa 1938). But before the testator died, the owners of the real estate reconveyed it to the testator in return for her surrendering and canceling the note and mortgage. *Id.* at 363. When the testator died she owned the real estate, not the note and mortgage bequeathed to her son, so the court found the bequest to the son had adeemed. *Id.* at 365. In so finding, the court rejected the son's "theory that the subject matter of the bequest still exists but in a changed form." *Id.* In rejecting the argument, the court said:

> At the time the will was made the testatrix owned a note, secured by a mortgage,—personal property. At the time she died she owned real estate, the note and mortgage having been surrendered and canceled; that obligation had been completely wiped out, just the same as if [the party that owed money under the note] had paid her in cash.

*Id.* The same reasoning applies here.

Finally, in *In re Will of Miller*, the testator's will contained a specific bequest of real estate to specified family members. 105 N.W. 105, 105 (Iowa 1905), *overruled on other grounds by Newbury v. McCammant*, 182 N.W.2d 147

(Iowa 1970).[1]  Before the testator died, he sold the real estate to his son in return for a promissory note.  *Id.*  The court found the issue to be "narrowed down to the single question whether the promissory notes given to the testator for the price of real estate sold by him are to be distributed under" the clause of the will specifically bequeathing the real estate to specified family members, or whether the notes passed under the residuary clause of the will.  *Id.* at 106.  The court answered this question by holding that it is "well settled that upon sale of devised real property by the testator the proceeds of such sale of which he may die possessed will not be substituted for the property itself, unless a direction so to do is found in the will."  *Id.*  We have a closely analogous situation here with proceeds of the sale of a specifically devised asset.  As in *Miller*, we will not substitute proceeds for the specifically devised property, as there is no direction to do so in the Trust agreement.

From these cases, we conclude that the rule is that specific bequests of property that the testator no longer owns at the time of distribution adeem and are not replaced by proceeds.  Part of the rationale behind this rule is that the testator knows that the specifically bequeathed property has been disposed of and if they didn't want the bequest to adeem, they could have changed their will or trust.  *See Sprague*, 57 N.W.2d at 216 ("She knew that she had acquired an undivided interest

---

[1] The language in *Newbury* partially overruling *In re Will of Miller* reads, "For reasons heretofore stated we agree with that observation and *In re Will of Miller* . . . is accordingly overruled insofar as inconsistent with this opinion." *Newbury*, 182 N.W.2d at 151.  It is not entirely clear in *Newbury* what observation the court was referring to or which parts of *In re Will of Miller* it found inconsistent with its opinion, but we will explain later in this opinion why we believe the overruling of *Miller* in *Newbury* is on a different ground than what we rely upon in this part of our opinion.

in a contract to sell the real estate and yet she did not change her will, although she lived for some considerable time thereafter."); *Keeler*, 282 N.W. at 366 ("[The testator] had knowledge of the condition of her estate after she canceled the note and mortgage. She knew that she had taken title to this real estate but she did not change the will although she lived approximately a year and a half after she took title."). This rationale applies here with equal force. And to this we add the observation that, if it had been Paul's intent to cancel the Note (or transfer it back to Carl) upon his death, such intent could have been expressed in the Note itself, but it wasn't.

Our case law recognizes exceptions to the above-described rule that specific bequests of property that the testator no longer owns at the time of distribution adeem and are not replaced by proceeds. One exception is when specifically devised property is missing from the estate because of some act or event involuntary as to the testator, such as when the testator's attorney-in-fact or guardian disposes of the property without the knowledge of the testator or when the testator is incompetent, and proceeds are identifiable. *See Anton*, 731 N.W.2d at 26–28 (refusing to find ademption of identifiable proceeds when the testator's attorney-in-fact sold specifically devised property without the testator's knowledge); *In re Est. of Bierstedt*, 119 N.W.2d 234, 236 (Iowa 1963) ("Where, as here, the testator is incompetent and under guardianship, a sale by the guardian does not work an ademption so far as the proceeds are traceable.").

This exception does not apply here because there is no question that Paul was competent and voluntarily sold the specifically bequeathed property after executing the will and Trust agreement but before he died. Our cases recognize

that, when this exception does not apply, disposal of specifically devised property amounts to ademption, including as to the property's proceeds.  *See Anton*, 731 N.W.2d at 27 (noting in a case involving identifiable proceeds that "[i]f [the testator] was aware of the transaction, was aware of the impact the transaction had on her estate plan, and did not change her will, ademption would, of course, occur under the identity theory"); *Bierstedt*, 119 N.W.2d at 238 ("Our rulings in the *Keeler*, *Sprague*, and *Bernhard*[2] cases . . . are sound and we adhere to them.  We have simply followed the prevailing view as to ademption by the acts of a guardian of an insane or incompetent testator with his ward's property."); *see also Steinberg*, 894 N.W.2d at 469 (citing *Anson* and *Bierstedt* in noting "that our previous rulings holding that property was adeemed when competent testators sold or otherwise disposed of specific bequests were sound and would continue to control").

A second exception applies in the situation presented in *Newbury*.  182 N.W.2d 147.  In *Newbury*, the testator's will directed her executor to sell specific real estate and distribute the proceeds rather than distributing the real estate itself.  *Id.* at 148.  But before she died, the testator sold the specific real estate on contract, so there was nothing for the executor to sell.  *Id.*  As to the real estate at issue, she owned only the rights in the contract and not the real estate itself.  *Id.*  The court noted that "the gift is of proceeds from specified realty to be sold upon testatrix' death. . . . Thus the gift never had identity as specified realty."  *Id.* at 150.  Because the gift had always been of proceeds and not the real estate itself, the court refused to find ademption of the gift in the form of the contract because the contract was

---

[2] *In re Est. of Bernhard*, 112 N.W. 86 (Iowa 1907).

proceeds that were "(1) identifiable, (2) found in the estate, and (3) constitute identical property which testatrix intended should pass to [the named beneficiaries of the specific bequest]." *Id.* at 151.

Here, if the Trust agreement directed the trustees to sell "[a]ll right, title, and interest in and to [the Company]" and distribute the proceeds to Carl, then the exception in *Newbury* may apply. But that is not what happened here. Here, the gift directed by the Trust agreement was to give Carl "[a]ll right, title, and interest in and to [the Company]," not the proceeds of any such right, title, or interest. As a result, the third requirement to trigger the exception recognized in *Newbury*— specifically that the proceeds constitute identical property to that intended to be passed—has not been met. Therefore, the exception does not apply, and ademption prevents giving Carl the Note that represents the proceeds of Paul's sale of his shares of stock in the Company.[3]

Based on the above, we conclude that the district court correctly ruled that the gift of "[a]ll right, title, and interest in and to [the Company]" does not include the Note and Carl is not entitled to receive the Note or be relieved from its obligations under the provisions of the Trust.

But, as previously alluded to, we reach a different conclusion with respect to the security interests securing the Note. Those security interests fall within the grant of "[a]ll right, title, and interest in and to [the Company]." As a result, we find

---

[3] As noted in footnote 1, *Newbury* noted that it overruled *In re Will of Miller* "insofar as inconsistent with" the *Newbury* opinion. We interpret this limited overruling of *Miller* to refer to the exception recognized in *Newbury* just described. As we have determined that exception does not apply, we also determine that the limited overruling of *Miller* does not apply to the general rule that *Miller* follows as described earlier in this opinion.

that the Trust agreement gives those security interests to Carl, so the collateral in the form of security interests in the Company is released. In short, Carl still owes the outstanding balance of the Note, but the Note is no longer secured by any security interests in favor of the Trust. The district court's order is modified accordingly.

## B.    Breach of Fiduciary Duty

After finding that the gift of all interest in the Company to Carl adeemed, the district court determined that Carl and Teresa breached their fiduciary duties as co-trustees by trying to give the Note to Carl and relieve him of the obligation to pay the Note's outstanding balance. As a consequence, the district court removed Carl and Teresa as co-trustees and appointed a bank as the trustee. Carl and Teresa challenge this finding and action by the district court.

The remedies for breach of trust by a trustee are exclusively equitable, and any action for such breach is to be addressed in a court of equity. Iowa Code § 633A.4501(2) (2021). As an equitable proceeding, our review is de novo. Iowa R. App. P. 6.907.

Carl and Teresa contend they did not breach their fiduciary duties because they had a good faith belief that their actions of trying to relieve Carl from his obligation under the Note were justified. We disagree. A breach of any duty a trustee owes to a beneficiary is a breach of trust. Iowa Code § 633A.4501(1). Remedies for a breach of trust include removal of the trustee. *Id.* § 633A.4502(1)(e).

We start our analysis by identifying several duties trustees have. Trustees have a duty to administer the trust "solely in the interest of the beneficiaries" and

to "act with due regard to their respective interests." *Id.* § 633A.4202(1). Trustees are also prohibited from engaging in self-dealing and from obtaining personal advantage from trust property. *Orud v. Groth*, 708 N.W.2d 72, 79 (Iowa 2006); *see also* Iowa Code § 633A.4202(2) (permitting a beneficiary to void "[a]ny transaction involving the trust which is affected by a material conflict between the trustee's fiduciary and personal interests"). They also have the duty to "take reasonable steps to enforce claims of the trust." Iowa Code § 633A.4211.

Following our de novo review, we find that Carl and Teresa violated all the above-described duties. It is clear that the Note was not an interest in the Company such that Carl should be relieved of his obligation to satisfy the Note by paying its outstanding balance to the Trust to be distributed equally to the three siblings.[4] Carl's efforts to forgive the outstanding balance owed on the Note—efforts in which Teresa was complicit—was a failure to administer the trust solely in the interest of beneficiaries, a form of self-dealing intended to gain a personal advantage, and a failure to take reasonable steps to enforce the Trust's claims to receiving the outstanding balance of the Note to distribute to all beneficiaries. Based on this conduct, both Carl and Teresa committed a breach of trust, and the

---

[4] And even if we assumed for the sake of argument this was not clear, it was clear that there was at least a question about the propriety of trying to relieve Carl from responsibility for payment of the Note. As such, at the very least, Carl and Teresa should have invoked the court's jurisdiction to resolve the question. *See* Iowa Code § 633A.6101 (allowing any interested party to invoke the court's jurisdiction to address affairs of the trust); *see also id.* § 633A.4202(2)(c) (permitting an exception to the voidability of a transaction involving a conflict between a trustee's fiduciary and personal interests if "[t]he transaction is approved by the court after notice to interested parties"). Yet Carl and Teresa did not invoke the court's jurisdiction to resolve the question after notice to Lora. Instead, they simply declared that the Trust would not be seeking to collect the outstanding balance owed on the Note.

district court was correct in so finding. *See id.* § 633A.4501(1) ("A violation by a trustee of a duty the trustee owes a beneficiary is a breach of trust."). We also agree with the district court's decision to remove Carl and Teresa as trustees as a consequence of their breaches. *See id.* § 633A.4502(1)(e) (granting power of removal). They have demonstrated an inability to deal fairly with Lora as it relates to the Note, and we see no purpose in setting the table for future fights by letting Carl and Teresa continue as trustees. We affirm on this issue.

### C. Attorney Fees

Carl and Teresa lodge multiple challenges to the district court's order requiring them to pay Lora's attorney fees. Lora contends that Carl and Teresa failed to preserve error on their challenges. To address these issues, we put Carl and Teresa's challenges into two categories: (1) those challenging individual items and categories of fees listed on the attorney fee affidavit submitted by Lora's attorney, including challenges based on claims of prior fee awards, prior denial of fees, and prior payment of fees; and (2) those based on the decision to award fees and the general amount thereof.

As to the first category of challenges, we find that Carl and Teresa never raised them to the district court. Because they never made them, the district court never addressed them, so they are not preserved for our consideration. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). By first raising these challenges on appeal, Carl and Teresa are asking us to be a court of first view rather than a court of review. That is not our role. *See Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017) (noting that an appellate court is "a court of review, not of first view" (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7

(2005))). We understand that the district court ruled on Lora's attorney-fee claim so quickly after she filed the attorney fee affidavit that Carl and Teresa may not have had time to resist it and tell the court why they resisted it (i.e., make the challenges they now make on appeal). Nevertheless, they certainly had time to file a motion under Iowa Rule of Civil Procedure 1.904(2) or some other motion asking the court to address their objections. A rule 1.904(2) or other motion calling the court's attention to its omission is required to preserve error when the district court fails to address an issue the party desires to address on appeal. *Meier*, 641 N.W.2d at 539. As Carl and Teresa did not do that, the first category of challenges are not preserved for our review.

As to the second category of challenges, because the court ruled on the issue by awarding fees and setting an amount, there is a ruling preserved for our review. We review for abuse of discretion. *In re Trust No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013).

The court awarded fees under Iowa Code section 633A.4507, which provides:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Our supreme court has adopted nonexclusive criteria for interpreting what justice and equity require under section 633A.4507:

> [G]eneral criteria drawn from other types of cases provide nonexclusive guides. These include (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and

(e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

*Trimble*, 826 N.W.2d at 491 (quoting *Atwood v. Atwood*, 25 P.3d 936, 947 (Okla. Ct. App. 2001)). The district court applied these nonexclusive criteria in approving Lora's claim of $38,266.86 when it noted

the complexity and nature of the issues raised by the . . . motion for summary judgment, the protracted nature of the litigation between Lora Hickey and he[r] co-beneficiaries Carl Meyers and Teresa Woodley, and the time necessary . . . for Lora Hickey's attorney to present her claim and obtain[] a ruling by the court.

We find no abuse of the court's discretion in awarding fees and setting the amount. We affirm on this issue.

### III. Lora's Claim for Appellate Attorney Fees

Lora asks us to order Carl and Teresa to pay her attorney fees incurred for this appeal. The same statute that permits Lora to claim attorney fees at the district court—section 633A.4507—permits her to claim appellate attorney fees, as the statute does not exclude such claim. *See Abernethy v. Schmitt*, 879 N.W.2d 866, 869 (Iowa Ct. App. 2016) ("Attorney fees are permitted to be awarded when allowed by statute, and when not expressly excluded, appellate attorney fees may be awarded as well."). We consider the same nonexclusive criteria identified in *Trimble*. 826 N.W.2d at 491. The first, second, and fourth criteria—reasonableness of Carl and Teresa's claims, unnecessarily prolonging litigation, and prevailing party concepts—cut in favor of awarding fees, as Lora is the prevailing party and she has had to defend an appeal in which Carl and Teresa have taken a largely defenseless position. As to relative ability to bear the financial burden, the record does not provide us with enough information to assess this

criteria, so we view it as a neutral one. As to the final criteria, although we find Carl and Teresa's position to be largely baseless, we do not find them to have acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the conduct of the litigation. Balancing these criteria and also considering the sizeable award of district court fees, we find that Lora should bear the cost of her appellate attorney fees without contribution from Carl or Teresa.

**IV.    Conclusion**

We affirm the district court's order in all respects as to ademption of the specific bequest to Carl as described in this opinion, except we modify it to provide that the security interests in the Company held by the Trust are released to Carl and extinguished. We affirm the decision finding that Carl and Teresa breached their fiduciary duties and the decision to remove them as trustees of the Trust. We also affirm the district court's award of attorney fees, finding much of the challenge to the award unpreserved and no abuse of discretion as to the issues that were preserved. Finally, we decline to order Carl or Teresa to pay Lora's appellate attorney fees for this appeal. Costs are assessed equally to Carl and Teresa.

**AFFIRMED AS MODIFIED.**